## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:20-cr-00006-PB** |
| | ) | |
| **CHRISTOPHER CANTWELL** | ) | |
| | ) | |

## UNITED STATES' MOTION FOR DETENTION

Defendant Christopher Cantwell has a history of flouting bond conditions, harassing victims and witnesses, and threatening violence.  Indeed, defendant is charged here with two crimes of violence for threatening to rape an individual in front of children. Under the Bail Reform Act, 18 U.S.C. § 3142, the United States requests that the Court detain defendant Christopher Cantwell pending trial.  For the reasons set forth below, including his violent history, his contempt for bail conditions, his cultivated ability to influence his followers, and his practiced use of secure means of communication, there is no condition or combination of conditions that can reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

### I.      The Bail Reform Act

The Bail Reform Act authorizes the Court to detain a criminal defendant upon finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e). In making its bail determination, the Court is required to consider information regarding: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

The Government bears the burden of demonstrating dangerousness by clear and convincing evidence, and must support a finding of risk of flight by a preponderance of the evidence. *United States v. Johnson*, 12-mj-01-01-LM, 2012 WL 40463, at *2 (D.N.H. Jan. 6, 2012).

Detaining the defendant is appropriate here because each of the factors set forth in 18 U.S.C. § 3142(g) weighs heavily in favor of detention pending trial.

## II.     The nature and circumstance of the offense charged

The indictment alleges that in June 2019 the defendant sent threatening communications in an attempt to obtain personal information about one of the defendant's perceived enemies. The United States will proffer the following facts:

On June 16, 2019, during a series of interstate communications sent via the Telegram[1] messaging service, the defendant communicated with Victim 1.  A portion of that conversation is below:[2]

| | |
|---|---|
| Cantwell: | Get a f*cking life or I will ruin the one you have.<br>Don't bother anyone, then you won't have to worry about crossing me. |
| Victim 1: | I haven't given you any thought and it was an honest mistake.  Didn't even know you were in there or I'd have thought better of it.  Other than that, all I can do is just leave you the f*ck alone and tell other people to do the same – which I have done.<br>Seriously man I couldn't care less about what you are trying to do these days. |
| Cantwell: | You're a f*cking liar.  You came here with your loser f*cking pals because you have the attention span of a n*gger and the morals of a k*ke, and because of that fact, you are going to lose everything you have<br>Next time I post that photo, the faces won't be blurred, and then you're going to start getting unexpected visitors<br>And I don't care if it's you causing the trouble, you're the one who's gonna suffer cause you're the one who I can get |

---

[1] Telegram is a cloud-based mobile and desktop messaging app that allows for private, heavily encrypted messages that can self-destruct. *See* Telegram, https://telegram.org/ (last visited January 17, 2020).

[2] "*" alteration added

|  | If you wanna dox Vic, he's a better target, but if you give me fake info, then your wife is gonna have trouble sleeping at night until she leaves you and takes your kids away |
|---|---|
| Victim 1: | What picture are you even talking snout<br>About |
| Cantwell: | F*ck around and I'll remind you the hard way |
| Victim 1: | So I am assuming peach took the picture.  Guess that means you don't care what happens to her either |
| Cantwell: | As a matter of fact, I don't.  So if you don't want me to come and f*ck your wife in front of your kids, then you should make yourself scarce<br>Give me Vic, it's your only out<br>I guess I'm going to have to prove my seriousness |
| Victim 1: | Show me the picture you have |
| Cantwell: | No<br>[PHOTO OF VICTIM 1's WIFE & CHILDREN]<br>More where that came from.<br>I bet one of my incel listeners would love to give her another baby.<br>You think the FBI would take issue with an LSD user owning guns around kids?<br>[PHOTO OF VICTIM 1 WITH STRIPS ON TONGUE]<br>Give me Vic |
| Victim 1: | I don't own guns or do drugs |
| Cantwell: | Lol<br>OK I guess you're not going to give me what I want<br>Fine.  Good luck |
| Victim 1: | I don't even have his dox |

The defendant was interviewed by law enforcement on multiple occasions.  During one interview, on October 24, 2019, the defendant looked at a copy of the Telegram message exchange and affirmed that he sent the messages to Victim 1.  He added, "I'm a little nervous that I'm being asked about this," because "they" told the defendant it was "extortion."  In an e-mail to FBI, defendant wrote: "I threatened to expose his identify if he continued harassing and defaming me." and "....I did expose him, after offering him the out of identifying Vic....I also

called the CPS office in his area..."  The defendant also e-mailed FBI a copy of a recorded call between him and a female.  In that call, the defendant stated that he had some "legal liability" for his threat.

Defendant's statement—"if you don't want me to come and f*ck your wife in front of your kids, then you should make yourself scarce"—conveys an intent to commit violence against, and specifically rape, a particular person.  It communicates an intent to commit violent acts that, if realized, would put a particular individual (and her children) in danger.  Moreover, these crimes constitute "crimes of violence" as defined by the Bail Reform Act.[3]

The gravity of the threat is amplified by defendant's later statements to the victim that he was going to "prove" his "seriousness" and that one of his "incel listeners would love to give her another baby."  He took additional affirmative acts by ensuring that Victim 1 knew that defendant had photographs of Victim 1's family.

---

[3] Under the Bail Reform Act, the government may seek pretrial detention of a defendant charged with a "crime of violence." 18 U.S.C. § 3142(f)(1).  The Bail Reform Act defines "crime of violence" to include an offense that "has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4).  Both charges here are divisible, meaning they comprise multiple, alternative versions of the crime.  The categorical approach applies when determining whether a crime constitutes a "crime of violence" under the Bail Reform Act.  *United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999).  Applying the modified categorical approach, the indictment alleges that the defendant violated both statutes by communicating a threat to injure the person of another, not a threat to kidnap.  *See United States v. Santoro*, 359 F. Supp. 3d 122, 127 (D. Me. 2019).  Because of this, both charges include an element of the threatened use of physical force and qualify as crimes of violence under the Bail Reform Act.  *See e.g., United States v. White*, 810 F.3d 212,  223 (4th Cir. 2016) ("Thus, to intend to extort one must necessarily intend to instill fear of harm (for purposes of § 875(b), in the form of kidnapping or physical injury)."); *United States v. Chapman*, 866 F.3d 129, 134-36 (3d Cir. 2017) (finding that  conviction under 18 U.S.C. § 876(c), which requires knowingly mailing communication containing  threat to injure another person, constitutes a crime of violence under career offender enhancement in Sentencing Guidelines); *United States v. Choudhry*, 941 F. Supp. 2d 347, 351 (E.D.N.Y. 2013) ("[C]ommunicating a threat in violation of 18 U.S.C. § 875(c) constitutes a "crime of violence," warranting detention under the Bail Reform Act."); *United States v. Cooper*, case no. 3:19-mj-04254-1, 2019 WL 4259454, at *3 (M.D.T.N. September 9, 2019) (same).

### III.      Weight of the evidence

The weight of the evidence is strong.  During the investigation, defendant did not contest that he made the threat.  Rather, he acknowledged that he sent the threat for the purpose of obtaining identifying information for another individual.  The government's evidence will include a copy of the threatening communication, witness testimony, and the defendant's admissions that he sent the message.

### IV.      History and characteristics of the defendant

The Court must also consider defendant's individual history and characteristics, including, among other factors, his character, family ties, employment, financial resources, past conduct, history relating to drug or alcohol abuse, and criminal history. 18 U.S.C. § 3142(g)(3)(A)-(B).

Defendant has a limited, but serious, criminal history.  He has prior misdemeanor convictions for operating a motor vehicle under the influence of drugs or alcohol (Suffolk County, New York, 2000), criminal possession of stolen property (Suffolk County, New York, 2009), and criminal possession of a weapon (Suffolk County, New York, 2000).

Then, on the evening of August 11, 2017, at the torch-lit "Unite the Right" rally at the University of Virginia, Defendant dispensed a can of pepper spray into the face of at least one counter-protestor:[4]

---

[4]  *See* Exhibit 7 of the Government's Detention Hearing Exhibits.



For his conduct during the rally, defendant was convicted of two counts of misdemeanor assault and battery. *See Commonwealth of Virginia v. Cantwell*, case no. CR17000845-00; *Commonwealth of Virginia v. Cantwell*, case no. CR17000784-00.

During the pendency of those charges, defendant repeatedly violated his bail conditions. Defendant was arrested on August 23, 2017, was initially detained, and was released on bail with a condition of home electronic monitoring on December 8, 2017. (Exh. 1, Dec. 8, 2017 Order.) His bond conditions were amended on January 19, 2018, and again on April 26, 2018 after defendant committed a new offense—public swearing/intoxication—on March 31, 2018. *See* Exh. 2, *Commonwealth of Virginia v. Cantwell*, CR17-784, Pleadings/Order Detail. Defendant's bond conditions were amended again on May 24, 2018. Then, in July 2018, the Commonwealth alleged that defendant repeatedly violated his bond conditions by directly and indirectly contacting victims of the offenses, including by "engag[ing] in online communication intended to harass and potentially intimidate victims in this matter." *See* Exh. 3, *Commonwealth of Virginia v. Cantwell*, CR17-784, CR17-845, Commonwealth's Motion to Revoke or Modify Bond, ¶ 11. He did so even after directed not to by his attorney and the Court. *Id.*, ¶¶ 10, 13, 15.

Defendant was arrested on July 20, 2018, and pleaded guilty to violating his bond conditions. *See* Exh. 4, Sentencing Order.

Other statements of the defendant demonstrate his danger to the community and propensity for violence. For example, in a Vice News documentary on the weekend events in Charlottesville, defendant made statements that "of course" he is capable of violence, "I'm carrying a pistol, I go to the gym all the time, I'm trying to make myself more capable of violence." *See* Vice News, Charlottesville: Race and Terror.[5]  In another exchange, when asked whether he was a non-violent protestor, the defendant stated "I'm not even saying we're non-violent . . . I'm saying that we didn't aggress. We didn't initiate force against anybody. We're not non-violent. We'll f*cking kill these people if we have to." *Id.* ("*" alteration added).

The defendant was born and raised in Long Island, New York. He moved to New Hampshire in 2012, but has no family in the area. His girlfriend lives in Maryland, and defendant frequently travels back and forth between Maryland and New Hampshire. The defendant lacks steady employment and relies on donations and financial support from others.

As he has frequently admitted in his broadcasts, the defendant has a lengthy and serious history of abusing drugs. He has described this "terrible habit" of shooting up with methamphetamine. He has also snorted heroin, smoked "a lot of" crack, and used PCP and ecstasy.

Defendant has posted numerous articles between his multiple websites regarding privacy, tradecraft, and operational security (OPSEC). He emphasizes use of the Dark Web and TOR (The Onion Router), virtual private networks (VPNs), secure email, secure operating systems, Russia-based software, encrypted communication applications, and use of cryptocurrency.

---

[5] *See* Exhibit 6 of the Government's Detention Hearing Exhibits.

Defendant has also posted information on tracking and search tools used both to aid in online anonymity as well as to research sensitive, personal information about adversaries in order to "dox" them, or broadcast their private or identifiable information online.

## V.     Nature and seriousness of danger posed by defendant

The evidence is clear and convincing that the defendant poses a danger to the community. The defendant has a history of threatening violence, engaging in violent behavior, and flouting bond conditions.  His criminal history and his willingness to violate bond conditions suggests that he is unlikely to comply with any conditions of release that the Court could devise.  Under these circumstances, the defendant should be detained pending trial.  The danger is especially pronounced here where the defendant is charged with a crime that involves a threat to a victim and the defendant has a history of harassing victims in other court cases.  Moreover, defendant has demonstrated that he is aware that he has the ability to influence others.  He did not hesitate to reference that ability in threatening violence.  That circumstance makes it more likely that his threats will be taken seriously, and that any victims may fear violence from multiple fronts. Here, for example, Victim 1 was threatened violence directly by defendant, but also by the prospect that the defendant's listeners would target him.  The defendant's influence over others therefore makes him an even greater threat to the community.

## VI.     Defendant's risk of flight

Defendant has been charged with serious felonies—two crimes of violence—and the evidence against him is substantial.  He has limited ties to New Hampshire and limited employment history. Notably, the defendant delayed turning himself in for approximately one week days in the Charlottesville case, even though he knew an arrest warrant was pending.   This is sufficient for the Court to find risk of flight by a preponderance of the evidence.  *See United*

*States v. Valdiva*, 104 F. App'x 753, 754 (1st Cir. 2004) (noting that court considers family ties, steady and gainful employment, reputation in the community, and whether there are family members available to take custody of the defendant).

**VII.    Alternatives to detention**

There is "no condition or combination of conditions" that will reasonably assure the defendant's appearance as required and the safety of any other person and the community.  18 U.S.C. § 3142(e).  The fact that he flouted his prior release conditions demonstrates that he is unlikely to abide by any condition or combination of conditions that this Court could impose. Indeed, electronic monitoring and repeated orders not to make public postings about victims were insufficient to compel the defendant's compliance with bond conditions in his last criminal proceedings.  The defendant has demonstrated that he would be unwilling to abide by any conditions this Court could impose.

Moreover, home detention and electronic monitoring are insufficient to protect the community where the defendant has the ability to encourage others to do his bidding.  Here, defendant's communication to Victim 1 included an additional thinly-veiled threat to Victim 1's spouse—that one of his "incel"[6] listeners would "love to give her another baby." In the Government's experience, monitoring equipment can be circumvented by individuals who know how to install applications designed to hide files or applications.  Here, defendant has a history of sophisticated electronic use, including his use of Telegram, an application designed to keep communications private.  In addition, the monitoring software works, in part, by taking periodic screen shots of electronic device activity.  A probation officer then needs to review those

---

[6] "Incel" or "involuntary celibates," are members of a community where men blame "women for their involuntary celibacy, and sometimes advocated rape or other forms of violence." *Wikipedia*, Incel, *available at* https://en.wikipedia.org/wiki/Incel (last visited January 17, 2020).

voluminous materials.  Given defendant's history of extensive online activity—including online harassment and threats towards victims in his earlier criminal case—any monitoring software would make this type of review essentially unmanageable.  Moreover, a condition prohibiting the defendant from the use of "smart" electronic devices would be almost impossible to enforce. Defendant could simply obtain new devices without telling the probation officer.  In addition, it would similarly be meaningless given the defendant's podcast platform.

### VIII.   Conclusion

For all of these reasons, the United States respectfully requests that the Court order that the defendant be detained pending trial.

February 19, 2020                                             Respectfully submitted,

                                                             Scott W. Murray
                                                             United States Attorney


                                              By:    /s/ Anna Krasinski
                                                     Anna Krasinski
                                                     John S. Davis
                                                     Assistant U.S. Attorneys
                                                     53 Pleasant Street, 4th Floor
                                                     Concord, NH  03301
                                                     (603) 225-1552