IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | |
| | ] | |
| v. | ] | No. 20-CR-00006-PB |
| | ] | |
| CHRISTOPHER CANTWELL | ] | |

## SUPPLEMENT TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER

The Government asserts that Christopher was purposely deceitful in his communications with law enforcement. ECF 30 at p.6 ("Not once in these communications did Cantwell provide law enforcement with the whole story"). That narrative pervaded the original bail hearing and again rears its head in the Government's written objection. A description of his truthful interactions with state and federal law enforcement are laid out below.

As previously noted, Christopher made a formal complaint with federal law enforcement in February 2019 in regards to his harassment by a group that included the alleged victim. Although the FBI did not follow up on this complaint, there was nothing demonstrably false or misleading about these statements to federal law enforcement. Following this complaint, Christopher met and e-mailed with a detective from Keene Police Department through the spring of 2019. Those contacts were honest and forthright. Christopher e-mailed local law enforcement

1

after the contacts at issue in this case, and, despite the Government's characterization, was similarly honest about that incident.

On June 15 and 16, 2019, Christopher communicated online with the pseudonymous Cheddarmane. On June 21, 2019, Christopher e-mailed a Keene Police detective. He detailed a number of troubling incidents, including messages from a user with the online handle "Death 2 Cantwell" and threats on his life. In that e-mail, he explained the following:

> During one of their recent fits, I threatened to release one of their identities, and he called my bluff, so I published what I had and invited CPS in [REDACTED] to check on his children. That information is contained in Cheddar.zip attached to this email. He goes by Cheddar Man, Cheddar Mane, or Cheddy Blac, depending on the platform and time of day. I don't know his real name, but I do know his real address is contained in one of the attached images in that zip file

17R230_EMAILS-0000084. Christopher provided the detective with the unedited photographs that he had sent to Cheddarmane during their online exchange.

In this e-mail, Christopher acknowledged the substantive content of his online exchange with Cheddarmane. He explained that he wrote that he would release the man's identity and contact child protective services. Christopher did not discuss the statements regarding Cheddarmane's wife as they were not "true threats" intended to cause fear, but instead were the kind of empty mud-slinging, name-calling, and attention-getting that pervaded the contacts and interactions among this group. Most notably, Christopher's statement about Cheddarmane's wife followed immediately *after* Cheddarmane's menacing statement about Christopher's paramour, known online as "Peach," stating that he "guess[es] that

2

means you don't care what happens to [Peach ?]" The obvious intent of that statement was to suggest that something bad or injurious would happen to "Peach" as a result of Christopher's actions. Immediately following Cheddarmane's implication that harm would come to Christopher's girlfriend, Christopher made a comment about having sex with Cheddarmane's wife. He did not use the word "rape" or suggest violence, although the Government repeatedly references a threat to "rape" in its objection. *See e.g.*, *Id.* at 1 (asserting he was charged "with two crimes of violence for threatening to rape a woman . . ."); *Id.* at 6 ("Cantwell never mentioned his threat to rape a woman.").

In his contacts with the Keene police, Christopher did not report the statements against "Peach" for the same reason that he did not discuss the statements about Cheddarmane's wife. They were not "true threats" to injure, but were provocative declarations intended to rile up the recipient. Cheddarmane's statement about Christopher's significant other clearly had this intended escalating effect as Christopher responded almost immediately with the statement at the heart of the charged offense. These statements, like Cheddarmane's insult "faggot ass kike" later in the exchange, faded among the many taunts that were not substantive true threats. Thus, when Christopher emailed the Keene Police Department days later, describing the substance of what happened, he explained that he said that he would contact child services and reveal the man's identity as the harassment had continued. This was the meat of the conversation. Arguably, this is an incriminating statement, and one that a savvy, dishonest actor would conceal from law enforcement. But, Christopher was not attempting to conceal

3

information. What the Government sees as a dishonest cover-up of a crime is simply evidence that there was no crime.

After that, Christopher continued to be in touch with local police and ultimately the FBI. When speaking to the FBI in July, he asked to talk to them on a recorded line so as to ensure an accurate recording of his statements. The FBI did not consent to his recording. 17R239_REP-000087. They communicated by e-mail for a time thereafter. Similar to the claims of non-cooperation by the Government in relation to release, the FBI was quick to accuse Christopher of not cooperating and not providing information, *id.* at 278, to which Christopher explained:

> I had been under the impression that [Keene Police] provided the information to [the FBI] which I had provided to him at the time we began communicating. I am frustrated by the questioning if l am fully cooperating, as this is the first time you've asked me a question. To cooperate requires interaction, and your agency has thus far refused to engage with me unless we do so in your offices without a recording device. I don't trust you for very prudent reasons I've already spelled out, and I cannot afford an attorney to accompany me in meeting you.

*Id.* at 290. Christopher subsequently e-mailed the FBI the photographs that accompanied his online communication with Cheddarmane.

Christopher met with the FBI in September of 2019. This meeting with the FBI was not solely focused on the June 2019 online interaction with Cheddarmane. The Cheddarmane conversation arose during this meeting, but of the more than nine pages of FBI narrative, only a single paragraph was related to it. Despite the assertions of the Government, there is nothing to indicate that Christopher was deceitful or dishonest in that interview. Christopher said that he believed the FBI already had copies of the relevant exchange. This was a reasonable belief as the text

chain was posted online. The pictures were inaccessible in the online version, but Christopher had provided these pictures to the FBI by email before the meeting. Despite the Government's claim to the contrary, Christopher met with and was honest with the FBI in September.

Christopher met with the FBI a second time in October 2019. This time, the FBI took a confrontational posture. They pressed Christopher about his earlier emails to law enforcement regarding calling CPS and the online exchange with Cheddarmane. Notably, the FBI brought up the call to CPS and his intent to reveal personal information, but the FBI did not suggest culpability in the form of a threat of violence/rape. Christopher was honest and cooperative. He acknowledged sending the emails and the online communication with Cheddarmane. Christopher expressed some nervousness about answering questions about CPS and Cheddarmane, as he explained that people told him after-the-fact that this could be a crime. However, having heard this, Christopher still agreed to sit down with the FBI and answer their questions in a manner that could be considered incriminating. He did so honestly.

To suggest that the totality of these interactions indicates Christopher was non-cooperative or deceitful in his interactions with law enforcement is plainly inaccurate. Christopher's compliance with requests to meet with law enforcement and truthful responses even when doing so would be to his own detriment, does not show the strength of the Government's case, but identifies its weakness. Furthermore, Christopher's cooperative and truthful meetings and contacts with

5

law enforcement support the conclusion that he will abide by conditions and rules of pre-trial supervision while on release.

Additionally, Counsel has attached Exhibit A, a transcription of the entire relevant online communication. The Government provided a partial transcript in the body of its objection, but the full transcript relates the context of the conversation and thus reflects on the concerns of bail.

Respectfully submitted,
Christopher Cantwell
By His Attorney,

Date: June 24, 2020

*/s/ Eric Wolpin*
Eric Wolpin
N.H. Bar No. 18372
Assistant Federal Defender
Eric_Wolpin@fd.org

*s/ Jeff Levin*
Jeff Levin
N.H. Bar No. 12901
Assistant Federal Defender
Jeff_Levin@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served on June 24, 2020 to all counsel of record and in the manner specified herein: electronically served through ECF.

*/s/ Eric Wolpin*
Eric Wolpin
N.H. Bar No. 18372
Assistant Federal Defender
Federal Defender Office
22 Bridge Street
Concord, NH 03301

Tel. (603) 226-7360  
E-mail: eric_wolpin@fd.org