**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**United States**

  v.                Case No. 20-cr-00006-PB
                   Opinion No. 2020 DNH 129

**Christopher Cantwell**

### MEMORANDUM AND ORDER

Christopher Cantwell was arrested on January 23, 2020 after being charged by indictment in the District of New Hampshire. After holding a two-part detention hearing on February 20 and February 25, 2020, the magistrate judge determined that he should be detained (Doc. No. 20). Cantwell has filed a motion to revoke the detention order pursuant to 18 U.S.C. § 3145(b) or, in the alternative, to authorize his temporary release pursuant to 18 U.S.C. § 3142(i) (Doc. No. 28). After reviewing the record de novo, I deny Cantwell's motion.

### I. LEGAL STANDARDS

#### A. Standard of Review

When "a person is ordered detained by a magistrate judge," he "may file, with the court having original jurisdiction over the offense, a motion for revocation . . . of the order." § 3145(b).

Precedent dictates that I must review the magistrate judge's detention order de novo. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990); see also United States v. Oaks, 793 F. App'x 744, 747 (10th Cir. 2019) (per curiam) (applying the review standard more recently). De novo review, however, does not require a district judge to reinvent the wheel; if the magistrate judge has carefully and correctly analyzed the detention question in a written decision, no purpose is served by attempting to creatively rephrase the magistrate judge's analysis. What matters is that the district judge must independently assess the evidence and reach his or her own conclusions.

In reviewing a detention order, I "may reject the magistrate judge's fact finding and start the hearing anew[,] or [I] may accept the findings of fact made by the magistrate and hear additional facts and argument." United States v. Cross, 389 F. Supp. 3d 140, 142 (D. Mass. 2019) (quoting United States v. Oliveira, 238 F. Supp. 3d 165, 167 (D. Mass. 2017)); accord Tortora, 922 F.2d at 883 (providing for appellate review of the district court's decision, where the district court "accepted the subsidiary facts as found by the magistrate" and "the facts as presented in the record and as found by the magistrate").

**B.   Bail Factors**

When resolving a motion to revoke a detention order, I, like the magistrate judge who issued the order, must "determine whether any conditions or combination of conditions set forth in [18 U.S.C. § 3142(c)] will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(f). Pursuant to the provisions of § 3142(g), I consider the following factors when making this determination:

> (1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including . . . employment, . . . past conduct, . . . [and] criminal history . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

§ 3142(g)(1)-(4). If I "find[] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then I must "order the detention of the person before trial." § 3142(e)(1).

The government bears the burden of persuasion when seeking to detain a defendant prior to trial and it must either prove dangerousness by clear and convincing evidence or a risk of flight by the preponderance of the evidence. United States v. Iglesias-Benitez, No. 92-1837, 1992 WL 210612, at *2 (1st Cir. Sept. 1, 1992) (per curiam) (citing United States v. Patriarca,

3

948 F.2d 789, 792-93 (1st Cir. 1991)); see also § 3142(f) (applying the clear and convincing evidence standard to the dangerousness determination in § 3142(e)(1)).

## II. ANALYSIS

The magistrate judge issued a carefully considered written order explaining her decision to detain Cantwell pending trial. See generally Order of Detention Pending Trial, Doc. No. 20. Reviewing the detention issue de novo in light of the entire record, I conclude that the magistrate judge correctly determined that Cantwell must be detained. In reaching this conclusion, I adopt the magistrate judge's findings of fact and rulings of law and write only to explain why Cantwell's arguments challenging the order are unpersuasive.

### A. Weight of the Evidence Against Cantwell

When the magistrate judge's order issued, Cantwell had been charged with one count each of extortionate interstate communications, in violation of 18 U.S.C. § 875(b), and threatening interstate communications, in violation of § 875(c). Doc. No. 20 at 1 (identifying charges); accord Indictment, Doc. No. 1.[1] At that time, the magistrate judge noted that Cantwell

---

[1] On July 8, 2020, the grand jury returned a superseding indictment against Cantwell, adding two additional counts to the

4

"is charged with crimes that involve threats of violence. The evidence against [him], which includes a copy of the threatening communication and [his] admission that he sent the message, is strong." Doc. No. 20 at 3.

The charges against Cantwell stem from a June 2019 online exchange he had with a person by the pseudonym of "Cheddarmane," Def.'s Mot. for Review & Revocation of Detention Order ("Def.'s Mot."), Doc. No. 28 at 7; Suppl. to Def.'s Mot. ("Def.'s Suppl."), Doc. No. 32 at 2, in an effort to force Cheddarmane to disclose identifying information on a person known as "Vic," see Tr. with Timestamps of Cantwell/"Cheddarmane", Ex. A to Def.'s Suppl., Doc. No. 32-1 (transcribing entire online exchange between Cantwell and Cheddarmane). In this exchange, Cantwell told Cheddarmane, "So if you don't want me to come and f*ck your wife in front of your kids, then you should make yourself scarce[.] Give me Vic, it's your only out[.]" Doc. No. 32-1 (June 16, 2019, 17:41, 18:10) (alteration added); accord Doc. No. 28 at 7 (providing partial quote).

Cantwell challenges the magistrate judge's conclusion that the evidence against him is strong by contending that the exchange on which the charges against him are based does not

---

original indictment: threat to injure property or reputation, in violation of 18 U.S.C. § 875(d), and cyberstalking, in violation of 18 U.S.C. § 2261A(2). Superseding Indictment, Doc. No. 33.

5

qualify as a "true threat." Doc. No. 28 at 7-8. Specifically, Cantwell contends that, "[a]s is common among this online peer group," he and Cheddarmane used "coarse and aggressive language" but that Cheddarmane seemingly "did not view [Cantwell's] statements as true threats." Doc. No. 28 at 7. In support of his position, Cantwell points to Cheddarmane's subsequent "attempt[] to call [Cantwell] on-air on his show, presumably to provoke him[,]" and notes that "Cheddarmane did not approach law enforcement with concerns for his or his wife's safety following" their online exchange. Doc. No. 28 at 8. Rather, Cantwell had been reporting Cheddarmane for harassment to local and federal officials, and it is was these reports that led to an investigation of Cantwell himself. See Doc. No. 28 at 7, 8 (discussing Cantwell's reports to and conversations with federal authorities); Doc. No. 32 at 2 (quoting email from Cantwell to local police). He also points to a statement that Cheddarmane made against Cantwell's girlfriend's well-being prior to Cantwell's statements regarding Cheddarmane's wife, arguing that both men made statements that "were not 'true threats' to injure, but were provocative declarations intended to rile up the recipient." Doc. No. 32 at 3.

The Government takes a different view of the evidence and anticipates that Cheddarmane's testimony will support its position that Cheddarmane viewed Cantwell's statements as true

6

threats. See United States' Obj. to Def.'s Mot., Doc. No. 30 at
6-7. Cheddarmane, for example, took numerous actions to protect
himself, his family, and others associated with him after his
exchange with Cantwell. Doc. No. 30 at 7.

I am not persuaded by Cantwell's argument. Clearly, context
matters when it comes to the charges at issue in this case. But
even if the full picture Cantwell paints is revealed at trial,
it is difficult to characterize the evidence against him as
anything but strong. Although the presentation of his case may
change at trial, Cantwell currently challenges neither the
content of his alleged statement nor his alleged motive for
making it, which was to induce Cheddarmane to disclose
identifying information on Vic that Cheddarmane was otherwise
unwilling to provide. While it is conceivable that a jury could
determine that Cantwell's communication with Cheddarmane does
not qualify as a true threat, the evidence identified to date
provides, at best, limited support for Cantwell's argument.

B.  **Cantwell's Criminal History and Past Conduct[2]**

Cantwell acknowledges his criminal history and history of
violating release conditions. Doc. No. 28 at 9-10; accord Doc.

---

[2] Cantwell also challenges the magistrate judge's dangerousness
finding based on his lawful possession of firearms. Doc. No. 28
at 11-12. He notes that all his firearms have been seized by law
enforcement. Doc. No. 28 at 11. He requests that, rather than be

7

No. 20 at 4–5, 4 n.1 (finding that Cantwell's previous non-compliance with bail conditions "weighs in favor of detention"). This history includes attending "a contentious alt-right rally," which "led to . . . two misdemeanor convictions for assault," Doc. No. 28 at 10, and "direct and indirect contact, harassment, and intimidation of potential victims through online communications, even after warnings from the court and his legal counsel," Doc. No. 20 at 4.

To support his contention that he does not pose any threat to Cheddarmane, Cantwell points out that, even though he "has had the ability to communicate with people outside of the prison through phone and tablet[,]" he has not had any contact with Cheddarmane since the online communications at the center of this case, which took place over a year ago. Doc. No. 28 at 11. He also asserts that his communications while detained provide no indication that he has attempted to intimidate any witnesses during this time. See Doc. No. 28 at 11. He argues, therefore, that a condition forbidding him from having contact with Cheddarmane adequately protects Cheddarmane's safety, Doc. No.

---

returned to him, they "be released to a third-party who intends to sell them through proper and legal means" with "[t]he proceeds [going] directly to satisfy back- and future-rent." Doc. No. 28 at 11. On balance with the other considerations I discuss, however, this argument does not persuade me that Cantwell is entitled to pretrial release.

8

28 at 11, 19, and he promises to adhere to such a condition, see Doc. No. 28 at 10, 16 (discussing motivations for adhering to his proposed bail conditions).

This argument is nearly identical to the one Cantwell presented to the magistrate judge in February. She did not find it persuasive then, nor do I now. Cantwell makes his living from posting on various online communication platforms. See Doc. No. 20 at 5. "Some of [his] posts . . . include threats of violence against his perceived adversaries." Doc. No. 20 at 5. He has a deep understanding of several online tools and methods, Doc. No. 20 at 5-6, that "allow for anonymous communications and/or communications difficult to monitor, capture, or subpoena," Doc. No. 20 at 6. No condition or combination of conditions exist that could properly monitor his online activity in order to protect those involved with his case and the public.

**C.  Impact of COVID-19 on Cantwell's Detention Conditions**

Cantwell asserts an argument that was not available to him at his detention hearing in February. He argues that the confinement conditions at the Strafford County House of Corrections ("SCHOC") put him at risk of contracting COVID-19. Doc. No. 28 at 16. In support of his argument, he primarily relies on the factual findings and legal conclusions set forth in an order issued by Chief Judge McCafferty in Gomes v. U.S.

Dep't of Homeland Sec., Acting Sec'y, \_\_\_ F. Supp. 2d \_\_\_, No. 20-cv-00453-LM, 2020 WL 2514541 (D.N.H. May 14, 2020). Doc. No. 28 at 13-15 (citing to order from the Gomes docket).

I appreciate the generalized risk COVID-19 presents to those detained in correctional facilities, and I have no reason to challenge Chief Judge McCafferty's ongoing assessment of the conditions and precautionary measures in place at SCHOC. Cf. Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y, No. 20-cv-00453-LM, 2020 WL 3577302, at *3 (D.N.H. July 1, 2020) ("While [SCHOC's] approach to reducing the risks of COVID-19 has not been flawless, it has been, on balance, objectively reasonable."). Without a particularized health risk presented by COVID-19 to Cantwell, however, I cannot order him released based on these grounds. See, e.g., United States v. Campos-Ramenthol, 805 Fed. App'x 328, 329-30 (5th Cir. 2020) (per curiam) (affirming "district court's denial of [defendant's] motion to revoke or amend the detention order" when bail factors required detention and public health measures were in place at jail, even though detained defendant had several underlying health conditions that put him at a greater risk of contracting COVID-19). He does not provide me with any medical evidence that he is at an increased risk of contracting the virus or that, should he contract it, he would face more serious complications than the

average person. Cantwell, therefore, fails to make a sufficient legal argument for his release in light of COVID-19.

D. **Temporary Release under Section 3142(i)**

In the alternative, Cantwell argues that I ought to permit his temporary release, Doc. No. 28 at 18, into "the custody of a United States marshal or another appropriate person" because such release is "necessary for preparation of [his] defense," § 3142(i). "The defendant has the burden of establishing circumstances warranting temporary release" under this provision of the Bail Reform Act. United States v. Bothra, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020).[3]

In determining whether release is necessary, I may consider many factors, including but not limited to: "(1) the time and opportunity [Cantwell] had to prepare for the trial and participate in his defense, (2) the complexity of the case and

---

[3] Moreover, Cantwell has not identified an "appropriate person" into whose custody he would be released under this provision, see § 3142(i), and at least some district courts have denied a motion for temporary release on these, among other, grounds, see e.g., United States v. Akula, No. 19-CR-30039-MGM, 2020 WL 3496693, at *4 (D. Mass. June 29, 2020) (denying motion, in part, for failing to demonstrate the appropriateness of the person proposed); United States v. Landji, No. (S1) 18 CR. 601 (PGG), 2020 WL 1674070, at *6 (S.D.N.Y. Apr. 5, 2020) (denying motion, in part, for failure to name any person into whose custody defendant would be released); cf. Doc. No. 30 at 17 (asserting argument against temporary release). I find that his argument for temporary release also fails on these grounds.

11

volume of information, and (3) the expense and inconvenience associated with preparing while incarcerated." See id. (citing district court cases throughout the country).

Cantwell's counsel suggests that the volume of electronic discovery, including "the data equivalent of more than two dozen personal computers," requires Cantwell's careful review "to find relevant files" to his defense. Doc. No. 28 at 18. Although counsel asserts that such review is more difficult while Cantwell is incarcerated at SCHOC and subject to the precautionary measures in place for COVID-19, Doc. No. 28 at 18, counsel does not persuade me that their client is in a position different from that of any other detained pretrial defendant, vis-à-vis his ability to review discovery with his attorneys while detained, cf. Doc. No. 30 at 19. Even though I accept counsel's assertion that the volume of information to review in this case is high, it does not, standing alone, support a finding that temporary release is necessary, especially in light of the aforementioned dangerousness findings. This case is not particularly complex, and Cantwell is still able to review documents and confer with his attorneys while detained at SCHOC.

## III. CONCLUSION

For the foregoing reasons, after reviewing the entire record in this case de novo, I determine by clear and convincing

12

evidence that, under 18 U.S.C. § 3142(e), no release condition or combination of release conditions exist for Cantwell that will reasonably assure the safety of any other person and the community. I also find that Cantwell has not met his burden for temporary release under 18 U.S.C. § 3142(i). Accordingly, I deny Cantwell's motion to revoke the detention order (Doc. No. 28).

**SO ORDERED.**

                                                                                                          /s/ Paul Barbadoro
                                                                                                           Paul J. Barbadoro
                                                                                                           United States District Judge

July 22, 2020

cc:   Anna Z. Krasinski, Esq.
      John S. Davis. Esq.
      Eric Wolpin, Esq.
      Jeffrey S. Levin, Esq.
      U.S. Marshal
      U.S. Probation