UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                                                                                No. 1:20-cr-06-01-PB

CHRISTOPHER C. CANTWELL

### DEFENDANT'S PROPOSED JURY INSTRUCTIONS

Pursuant to Rule 30(a) of the Federal Rules of Criminal Procedure, as well as Local Rule 30.1, the defendant Christopher C. Cantwell, through his counsel, files these proposed jury instructions, and respectfully requests that the Court include the following instructions in its charge to the jury.

The defendant requests leave to offer such other and additional instructions as may become appropriate during the course of the trial.

Date: August 27, 2020

Respectfully submitted,

/s/ Eric Wolpin
Eric Wolpin (N.H. Bar #18372 )
/s/ Jeffrey S. Levin
Jeffrey S. Levin (N.H. Bar # 12901)
Assistant Federal Public Defender
22 Bridge Street, Box 12
Concord, NH 03301
(603) 226-7360
Email: eric_wolpin@fd.org
            Jeff_Levin@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2020 the above document was served via CM/ECF to all counsel of record and that a copy will be mailed to the defendant.

/s/ Jeffrey S. Levin
Jeffrey S. Levin

# DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 1

## 18 U.S.C. § 875(b)

## Extortionate Interstate Communications

### A. Charge

Count 1 charges Christopher Cantwell with transmitting an extortionate communication in interstate commerce.

In particular, it claims that on or about June 16, 2019, within the District of New Hampshire and elsewhere, Christopher Cantwell, with intent to extort from a person known as "Cheddarmane" (hereinafter Cheddarmane) a thing of value, namely, personal identifying information for a man known by the on-line pseudonym "Vic Mackey," and for the purpose of issuing a threat and with knowledge that the communications would be viewed as a threat, transmitted a communication in interstate commerce containing a threat to injure the person of another.

### B. Elements

To sustain its burden of proof for the crime of transmitting an extortionate communication in interstate commerce, the United States Attorney must prove each of the following elements beyond a reasonable doubt:

1. The defendant knowingly transmitted a communication in interstate commerce;

2. The communication contained a threat to injure the person of another;

3. The communication was transmitted for the purpose of issuing a "true threat" to injure the person of another and with knowledge that the communication would be viewed as a "true threat" to injure the person of another;

4. The communication was transmitted with the intent to extort any money or other thing of value from any person, firm, association, or corporation.

### C. Definitions

I will now explain the terms in these elements in more detail:

The word "knowingly," as used in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.[1]

A "threat" is a serious statement expressing an intent to injure another person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from a political statement, mere idle or careless talk, exaggeration, or something said in a joking

---

[1] First Circuit Pattern Jury Instructions 2.15, Definition of "Knowingly."

manner.[2] A statement is a "true threat" if it was made under such circumstances that a reasonable person hearing or reading the statement, and familiar with all the objective circumstances under which the statement was made, would understand it as a serious expression of an intent to injure another person.[3]

To act with "intent to extort" means to act with the intent to obtain something of value from someone else, with that person's consent, but induced by the wrongful use of actual or threatened force or violence.[4]

In determining whether the defendant's communication was sent with the intent to extort, you may consider all the circumstances surrounding the making of the communication. For example, you may consider the language, specificity, and frequency of the threat; the context in which the threat was made; the relationship between the defendant and the threat recipient; the recipient's response; and, whether you believe the person making the statement was serious, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.[5]

To transmit a communication in "interstate commerce" means to transmit it from a place in one state to a place in another state.[6]

The term "thing of value" is used in everyday meaning and is not limited to money or tangible things with an identifiable price.[7]

---

[2] United States v. Freeman, 176 F.3d 575, 578 (1st Cir. 1999); United States v. Whiffen, 121 F.3d 18, 21, 23-24 (1st Cir. 1997); United States v. Fulmer, 108 F.3d 1486, 1491-95 (1st Cir. 1997); United States v. Blumberg, CRIMINAL NO: 00-10-B-S, 2000 U.S. Dist. LEXIS 14834, at *7 (D. Me. Oct. 5, 2000).

[3] Elonis v. United States, 575 U.S. 723, 135 S. Ct. 2001 (2015).

[4] Eighth Circuit Pattern Jury Instruction, 6.18.875B Interstate Transmission of an Extortionate Threat (18 U.S.C. § 875(b)); S2 Modern Federal Jury Instructions-Criminal 6.18.875B (2020); United States v. Anderson, 14 F. App'x 33, 36 (2d Cir. 2001); United States v. Cohen, 738 F.2d 287, 289 (8th Cir. 1984).

[5] Eighth Circuit Pattern Jury Instruction, 6.18.875B Interstate Transmission of an Extortionate Threat (18 U.S.C. § 875(b)); S2 Modern Federal Jury Instructions-Criminal 6.18.875B (2020).

[6] *Id.*

[7] First Circuit Pattern Jury Instructions 4.18.875 cmt. 2, Interstate Communications—Threats, 18 U.S.C. § 875(c); United States v. Fagan, 821 F.2d 1002, 1015 n.9 (5th Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988).

## **DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 2**

### 18 U.S.C. § 875(c)

### **Threatening Interstate Communications**

### A. Charge

Count 2 charges Christopher Cantwell with transmitting a threatening communication in interstate commerce.

In particular, it claims that on or about June 16, 2019, within the District of New Hampshire and elsewhere, Christopher Cantwell, for the purpose of issuing a threat and with knowledge that the communications would be viewed as a threat, transmitted a communication in interstate commerce containing a threat to injure the person of another.

### B. Elements

To sustain its burden of proof for the crime of transmitting a threatening communication in interstate commerce, the United States Attorney must prove each of the following elements beyond a reasonable doubt:

1. The defendant knowingly transmitted a communication in interstate commerce;

2. The communication contained a "true threat" to injure the person of another; and

3. The communication was transmitted with the purpose of issuing a "true threat" to injure the person of another, and with the knowledge that the communication would be viewed as a "true threat" to injure the person of another.

### C. Definitions

I will now explain the terms in these elements in more detail:

The word "knowingly," as used in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.[8]

A "threat" is a serious statement expressing an intent to injure another person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from a political statement, mere idle or careless talk, exaggeration, or something said in a joking manner.[9] A statement is a "true threat" to injure the person of another, if it was made under such circumstances that a reasonable person hearing or reading the statement, and familiar with all the

---

[8] First Circuit Pattern Jury Instructions 2.15, Definition of "Knowingly."

[9] United States v. Freeman, 176 F.3d 575, 578 (1st Cir. 1999); United States v. Whiffen, 121 F.3d 18, 21, 23-24 (1st Cir. 1997); United States v. Fulmer, 108 F.3d 1486, 1491-95 (1st Cir. 1997); United States v. Blumberg, CRIMINAL NO: 00-10-B-S, 2000 U.S. Dist. LEXIS 14834, at *7 (D. Me. Oct. 5, 2000).

objective circumstances under which the statement was made, would understand it as a serious expression of an intent to injure another person.[10]

In determining whether the defendant's communication was sent with the purpose of issuing a "true threat" to injure the person of another, you may consider all the circumstances surrounding the making of the communication. For example, you may consider the language, specificity, and frequency of the threat; the context in which the threat was made; the relationship between the defendant and the threat recipient; the recipient's response; and, whether you believe the person making the statement was serious, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.[11]

To transmit a communication in "interstate commerce" means to transmit it from a place in one state to a place in another state.[12]

---

[10] Elonis v. United States, 575 U.S. 723, 135 S. Ct. 2001 (2015).

[11] Eighth Circuit Pattern Jury Instruction, 6.18.875C Interstate Transmission of an Extortionate Threat (18 U.S.C. § 875(c)); S2 Modern Federal Jury Instructions-Criminal 6.18.875C (2020).

[12] *Id.*

# **DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3**

## 18 U.S.C. § 875(d)

## **Threat to Injure Reputation**

### A. Charge

Count 3 charges Christopher Cantwell with transmitting a threat to injure reputation and to accuse another of a crime, in interstate commerce.

In particular, it claims that between on or about June 15, 2019, and on or about June 17, 2019, within the District of New Hampshire and elsewhere, the defendant, Christopher Cantwell, with intent to extort a thing of value, knowingly transmitted in interstate and foreign commerce communications containing a threat to injure the reputation of another, namely Cheddarmane, and a threat to accuse Cheddarmane of a crime.

### B. Elements

To sustain its burden of proof for the crime of transmitting a threatening communication in interstate commerce, the United States Attorney must prove each of the following elements beyond a reasonable doubt:

1. The defendant knowingly transmitted a communication in interstate and foreign commerce;

2. The communication contained "true threats" to injure the reputation of another person, and to accuse another person of a crime; and

3. The communication was transmitted with the intent to extort any money or other thing of value from any person, firm, association, or corporation.

### C. Definitions

I will now explain the terms in these elements in more detail:

The word "knowingly," as used in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.[13]

A "threat" is a serious statement expressing an intent to injure the reputation of another person, and accuse another person of a crime, which under the circumstances would cause apprehension in a reasonable person, as distinguished from a political statement, mere idle or careless talk, exaggeration, or something said in a joking manner.[14] A statement is a "true threat"

---

[13] First Circuit Pattern Jury Instructions 2.15, Definition of "Knowingly."

[14] United States v. Freeman, 176 F.3d 575, 578 (1st Cir. 1999); United States v. Whiffen, 121 F.3d 18, 21, 23-24 (1st Cir. 1997); United States v. Fulmer, 108 F.3d 1486, 1491-95 (1st Cir. 1997); United States v. Blumberg, CRIMINAL NO: 00-10-B-S, 2000 U.S. Dist. LEXIS 14834, at *7 (D. Me. Oct. 5, 2000).

if it was made under such circumstances that a reasonable person hearing or reading the statement, and familiar with all the objective circumstances under which the statement was made, would understand it as a serious expression of an intent to injure another person.[15]

To transmit a communication in "interstate commerce" means to transmit it from a place in one state to a place in another state.[16]

To transmit a communication in "foreign commerce" means to transmit it from a place in the United States to any place outside the United States.[17]

To act with "intent to extort" means to act with the intent to obtain something of value from someone else, with that person's consent, but induced by the wrongful use of actual or threatened force or violence.[18]

In determining whether the defendant's communication was sent with the "intent to extort," you may consider all the circumstances surrounding the making of the communication. For example, you may consider the language, specificity, and frequency of the threat; the context in which the threat was made; the relationship between the defendant and the threat recipient; the recipient's response; and, whether you believe the person making the statement was serious, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.[19]

The term "thing of value" is used in everyday meaning and is not limited to money or tangible things with an identifiable price.[20]

---

[15] Elonis v. United States, 575 U.S. 723, 135 S. Ct. 2001 (2015); Rosemond v. United States, 134 S. Ct. 1240, 1250 n.9 (2014) ("In any criminal case … the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission").

[16] *Id.*

[17] Eleventh Circuit Pattern Criminal Jury Instructions, Offense Instruction 30.3; 2 Modern Federal Jury Instructions-Criminal P 31.02 (2020).

[18] Eighth Circuit Pattern Jury Instruction, 6.18.875D Interstate Transmission of an Extortionate Threat (18 U.S.C. § 875(d)); S2 Modern Federal Jury Instructions-Criminal 6.18.875D (2020); United States v. Anderson, 14 F. App'x 33, 36 (2d Cir. 2001); United States v. Cohen, 738 F.2d 287, 289 (8th Cir. 1984); 18 U.S.C. § 1951(b)(2).

[19] Eighth Circuit Pattern Jury Instruction, 6.18.875D Interstate Transmission of an Extortionate Threat (18 U.S.C. § 875(d)); S2 Modern Federal Jury Instructions-Criminal 6.18.875D (2020).

[20] First Circuit Pattern Jury Instructions 4.18.875 cmt. 2, Interstate Communications—Threats, 18 U.S.C. § 875(c); United States v. Fagan, 821 F.2d 1002, 1015 n.9 (5th Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988);

## **DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4**

### 18 U.S.C. § 2261A(2)

### Cyberstalking

### A. Charge

Count 4 charges Christopher Cantwell with interstate and foreign cyberstalking.

In particular it is claimed that between in or about June 15 and June 17, 2019, within the District of New Hampshire and elsewhere, the defendant, Christopher Cantwell, with the intent to harass and intimidate Cheddarmane, did use facilities of interstate and foreign commerce, including electronic communication services and telephone facilities, to engage in a course of conduct that placed Cheddarmane in reasonable fear of serious bodily injury to Cheddarmane's spouse, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Cheddarmane and Cheddarmane's spouse.

### B. Elements

For you to find Christopher Cantwell guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

(1) The defendant knowingly used facilities of interstate and foreign commerce, including electronic cellular telephone networks;

(2) The defendant used the facilities of interstate or foreign commerce to engage in a course of conduct consisting of the sending of text messages, digital images, and other electronic communications to another person;

(3) The defendant, while engaged in that course of conduct, acted with the intent to harass and intimidate that other person;

(4) The course of conduct engaged in with the aforementioned intent placed that other person in reasonable fear of serious bodily injury to that person's spouse; and

(5) The course of conduct engaged in with the aforementioned intent caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that other person and his spouse.

### C. Definitions

I will now explain the terms in these elements in more detail:

The word "knowingly," as used in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.[21]

---

[21] First Circuit Pattern Jury Instructions 2.15, Definition of "Knowingly."

To act with "intent" means to act voluntarily and intelligently, not by ignorance, accident, or mistake, and with the specific intent or purpose of causing a desired result in a particular individual. It is not enough merely to foresee that such a result is a likely consequence of repeated communications. Moreover, a bad motive of some other kind, standing alone, is not enough.[22]

Intent to "harass" means to act with the specific purpose of causing an adverse emotional reaction in a specific person, not merely speech that happens to cause annoyance or insult.[23] Intent to "intimidate" means to act with the specific intent or purpose of putting a person in fear or apprehension of injury inflicted by a particular person.[24] In this case, the Government must prove beyond a reasonable doubt that the defendant purposefully sought and actually desired to cause an adverse emotional reaction in Cheddarmane, or to put Cheddarmane in fear or apprehension of injury inflicted by the defendant. If you find that that the defendant may have been able to foresee that an adverse emotional reaction or fear or apprehension of injury in Cheddarmane would be a likely consequence of his intended course of conduct, as defined below, but that the defendant did not purposefully seek or desire to cause that reaction, you must find the defendant not guilty.

A "course of conduct" is defined as a pattern of conduct composed of two or more acts, evidencing a continuity of purpose.[25] With regard to the intended course of conduct as alleged, the government must prove, beyond a reasonable doubt, that the defendant sent a pattern of two or more text messages, digital images, and other electronic communications to Cheddarmane, evidencing a continuity of purpose.

You may not consider constitutionally protected activity and speech as part of the intended course of conduct directed at Cheddarmane.[26]

---

[22] United States v. Ackell, No. 1:15-cr-00123-JL (D. N.H 2015), Docket No. 72, p. 25.

[23] United States v. Tobin, 545 F. Supp. 2d 189, 193 (D. N.H. 2008); *see also* United States v. Tobin, 480 F.3d 53, 57-58 (1st Cir. 2007); United States v. Sayer, 748 F.3d 425, 435 (1st. Cir. 2014); United States v. Ackell, No. 1:15-cr-00123-JL (D. N.H. 2015), Docket No. 72, p. 25.

[24] United States v. Cassel, 408 F.3d 622, 636-37 (9th Cir. 2013); United States v. Ackell, No. 1:15-cr-00123-JL (D. N.H.2015), Docket No. 72, p. 25.

[25] 18 U.S.C. § 2266(2); United States v. Ackell, No. 1:15-cr-00123-JL (D. N.H. 2015), Docket No. 72, p. 24.

[26] Staley v. Jones, 239 F.3d 769, 786 (6th Cir. 2001); Overstreet v. Kixmiller, 120 S.W.3d 257, 260 (Mo. Ct. App. 2003) ("'Course of conduct'... does not include constitutionally protected activity."); *see* Sayer, 748 F.3d at 435; United States v. Cassidy, 814 F. Supp. 2d 574, 586, 588 (D. Md. 2014).

You may also not find the defendant guilty of this offense unless you unanimously agree on which two or more text messages, digital images, and other electronic communications to Cheddarmane form each course of conduct.[27] It is not sufficient if you all agree that two or more of the texts, digital images, or electronic communications in evidence form the course of conduct, but cannot agree on which two. If you cannot unanimously agree on two or more specific texts, digital images, or electronic communications in evidence sent by the defendant with the required specific intent that form the course of conduct, then there is no unanimous agreement and you must return a verdict of not guilty.[28]

Using "facilities of interstate and foreign commerce" means employing or utilizing any method of communication or transportation between one state and another, or between the United States and any place outside the United States, and includes, for example, using electronic cellular telephone networks, the mail, or the internet.

"Serious bodily injury" means bodily injury that involves a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.[29] When considering whether the defendant engaged in a course of conduct that placed Cheddarmane in reasonable fear of serious bodily injury to Cheddarmane's person's spouse, you must consider whether a reasonable person in the same or similar circumstances as Cheddarmane, in light of the evidence presented in this case, would suffer fear that his spouse would suffer bodily injury involving a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, and whether a reasonable person in the same or similar circumstances as the defendant, in light of the evidence presented in this case, would reasonably expect that the intended course of conduct would cause such fear to Cheddarmane.[30]

---

[27] Reading Richardson v. United States, 526 U.S. 813 (1999), and Schad v. Arizona, 501 U.S. 624, 631–32 (1991) (plurality opinion), together, it appears unanimity is required when the government alleges more than one possibility for an element of the crime, but not when the government contends that the defendant committed an element of the crime using one or more of several possible means. Richardson, 513 U.S. at 817.

[28] Seventh Circuit Pattern Jury Instructions 4.04, Unanimity of Specific Acts; S2 Modern Federal Jury Instructions-Criminal 4.04 (2020).

[29] 18 U.S.C. § 1365(g)(3).

[30] *See, e.g.,* United States v. Carrigan, 724 F.3d 39 1st Cir. 2013) (*de facto* arrest standard analyzed based on a reasonable person in the suspect's position under the particular circumstances); Soto-Maldonado v. Shinseki, No. 12-1621, 2013 WL 5719120 (D.P.R. Oct. 17, 2013) (under the Federal Tort Claims Act, foreseeability measured by reference to a reasonable, prudent person under the same or similar circumstances); United States v. Viosine, 778 F.3d 176 (1st Cir. 2015) (recognizing criminal recklessness as "a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation"); United

"Substantial emotional distress" means mental distress, mental suffering or mental anguish, and includes depression, dejection, shame, humiliation, mortification, shock, indignity, embarrassment, grief, anxiety, worry, fright, disappointment, nausea, and nervousness, as well as physical pain.[31] "Substantial emotional distress" means a serious invasion of the victim's mental tranquility, which is more than everyday mental distress or upset.[32] Substantial emotional distress is emotional distress that is so severe that no reasonable person could be expected to endure it.[33] When considering whether the intended course of conduct "would be reasonably expected to cause substantial emotional distress" to Cheddarmane, you must consider whether a reasonable person in the same or similar circumstances as Cheddarmane, in light of the evidence presented in this case would suffer substantial emotional distress as a result of the intended course of conduct, as defined in these instructions and whether a reasonable person in the same or similar circumstances as the defendant would reasonably expect that the intended course of conduct would cause substantial emotional distress to Cheddarmane.[34]

---

States v. Ramirez, No. 10-344, 2012 WL 733973 (D.P.R. Mar. 6, 2012) (an ordinary person faced with the same set of circumstances is the relevant standard for determining if a battered person "would have reasonably feared suffering immediate bodily injury or death).

[31] United States v. Mantusiewicz, No. 13-cr-83 (D. Del. July 10, 2015) (docket no. 330, 332) (*citing* United States v. Osinger, 753 F.3d 939, 945 (9th Cir. 2014) (further citations omitted).

[32] People v. Ewing, 76 Cal. App. 4th 199, 210 (Cal. Ct. App. 1999) (cited by United States v. Sayer, No. 11-cr-113, 11-cr-47, 2012 WL 1714746 at *8 n.25 (D. Me. May 15, 2012)).

[33] Dargie v. County of Hillsborough, No. 93-391, 1995 WL 73339, at *7 (D. N.H. 1995) (*quoting* Morancy v. Morancy, 134 N.H. 493, 496 (1991) (defining "severe emotional distress" in the torts context).

[34] *See, e.g.,* United States v. Carrigan, 724 F.3d 39 1st Cir. 2013) (*de facto* arrest standard analyzed based on a reasonable person in the suspect's position under the particular circumstances); Soto-Maldonado v. Shinseki, No. 12-1621, 2013 WL 5719120 (D.P.R. Oct. 17, 2013) (under the Federal Tort Claims Act, foreseeability measured by reference to a reasonable, prudent person under the same or similar circumstances); United States v. Voisine, 778 F.3d 176 (1st Cir. 2015) (recognizing criminal recklessness as "a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation"); United States v. Ramirez, No. 10-344, 2012 WL 733973 (D.P.R. Mar. 6, 2012) (an ordinary person faced with the same set of circumstances is the relevant standard for determining if a battered person "would have reasonably feared suffering immediate bodily injury or death).