UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No. 1:20-cr-00006-PB |
| ) | |
| CHRISTOPHER CANTWELL ) | |
| ) | |

**GOVERNMENT'S OBJECTION TO**
**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE WITNESS**

Defendant Christopher Cantwell engaged in conduct with the purpose and expectation that both the victim and the victim's wife would be impacted by it. He posted pictures of the victim's wife and children online in a community that she wanted no part of. Cantwell posted her state, town, and street underneath those photographs. He called her local child protective services with the expectation that child protective services would investigate her home. Despite this, Cantwell argues that her testimony should be excluded as irrelevant and unfairly prejudicial. To make this relevancy argument, Cantwell attempts to narrow the scope of the charged conduct. But, the Indictment specifically alleges that the course of conduct included posting photographs of her and her children "on the Radical Agenda account on Telegram Messenger," and "telephoning the child abuse and neglect hotline" in the victim's state and making a report against the victim. In light of the entire scope of the charged conduct, the victim's wife's testimony is both relevant and admissible on an essential element of Count Four of the Indictment—whether Cantwell's course of conduct caused or would have reasonably been expected to cause her substantial emotional distress.

    **A. The Statute and Count Four of the Indictment.**

Count Four of the Indictment charges Cantwell with cyberstalking, in violation of 18 U.S.C. § 2261A(2). The cyberstalking statute provides:

> Whoever—
>
> (2) with the intent to kill, injure, harass, [or] intimidate…another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> (A) places that person in reasonable fear of the death or serious bodily injury to a person…; or
>
> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A)
>
> shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A(2). Paragraph (1)(A) of the cyberstalking statute (referenced in the language quoted above) includes both "that person," and "a spouse or intimate partner of that person." 18 U.S.C. § 2261A(1)(A)(i-iii). A person may thus violate the statue by acting with specific intent to harass a person and engaging in a course of conduct that causes, or would be reasonably expected to cause, distress to that person's spouse. 18 U.S.C. §§ 2261A(2), (1)(A)(iii).

The crime charged in Count Four is defined in terms of whether the defendant's course of conduct caused distress to a particular individual. Court Four alleges that Cantwell intended his course of conduct to harass and intimidate the victim in a manner that caused, attempted to cause, or would reasonably be expected to cause distress to the victim's spouse. Superseding Indictment, ECF No. 33, at 3 (alleging that Cantwell's course of conduct "caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Victim 1 and Victim 1's spouse."). The alleged course of conduct includes posting photographs of Victim 1's spouse and children in the Radical Agenda Telegram group and calling the child abuse and neglect hotline to report that the children were endangered. *Id.* at 4.

### B. The witness's testimony is relevant.

The best evidence of whether Cantwell's course of conduct caused or would reasonably be expected to cause distress to the victim's spouse is her testimony. The United States anticipates that she will testify that knowing that images of her, with her children, taken in her house, were posted publicly in a forum that she was not a part of caused her substantial emotional distress. She is also distressed that, as recently as March of 2020, the photographs Cantwell posted of her on the Radical Agenda Telegram account and the information he posted about her address remain publicly available to all of the account's members. She will also testify that although she is convinced that any investigation by child protective services would have concluded that the children were in a safe environment, the prospect of such an investigation was upsetting.

It makes no difference that she was unaware of Cantwell's conversation with her husband where Cantwell threatened to rape her or send one of his "incel listeners" to rape her. The evidence in this case will show that Cantwell engaged in a course of conduct—including posting photographs of her and her children and calling the child abuse and neglect hotline—with the purpose and expectation that she and her children would be impacted by it. Her testimony is relevant under Rule 401 of the Federal Rules of Evidence to establishing whether that course of conduct caused or would reasonably be expected to cause her substantial emotional distress.[1]

---

[1] The United States was unable to find any cases directly on point. The United States did find two cases addressing whether an indictment should be dismissed based on multiplicity. In *United States v. Moreland*, 272 F. Supp. 3d 1222 (N.D. Okla. 2016), the court dismissed an indictment identifying the victim's brother as a subject who suffered substantial emotional distress as a result of the defendant's conduct where it was undisputed that the defendant did not contact any member of the victim's immediate family, and there was no evidence he had engaged in any conduct with a purpose, attempt, or expectation that family members would suffer substantial emotional distress. In that case, the evidence showed only that the defendant sent hundreds of e-mails to the victim, and the victim forwarded the communications to her brother. In *Untied States v. Oury*, 2019 WL 8440692, at *5 (S.D. Ga. Dec. 10, 2019), the court denied a motion to dismiss an indictment identifying the victim's parents as subjects who suffered substantial emotional distress where the indictment alleged that the defendant drove to the victim's parents' home and engaged in conduct that would reasonably be expected to cause substantial emotional distress to the victim's parents. The

3

The United States should not be limited to arguing that Cantwell's conduct would have caused substantial emotional distress to a reasonable person. Rather, the United States should be permitted to introduce direct evidence on this issue.

Moreover, even if Cantwell's course of conduct were as narrow as Cantwell claims (it is not), her testimony would still be relevant. Though her husband insulated her at the time of the Telegram messages, she was still distressed when she afterwards learned about the conduct. Testimony about how she would have reacted if her husband had not insulated her is relevant to whether the course of conduct would reasonably be expected to cause her substantial emotional distress.

### C.  The witness's testimony is not "unfairly prejudicial."

Moreover, her testimony is not the type of "unfairly prejudicial" evidence that Rule 403 guards against. Rule 403 of the Federal Rules of Evidence allows a district court to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the danger of…unfair prejudice." Unfair prejudice, however "is reserved for evidence that invites the jury to render a verdict on an in improper emotional basis or for evidence that is shocking or heinous and likely to inflame the jury." *United States v. Soto*, 799 F.3d 68, 90 (1st Cir. 2015) (internal quotation marks omitted) (finding that testimony that the defendant was "tricking" the witness and "trying to steal" the witness's house and keep the money did not rise to the level of unfairly prejudicial); *United States v. Varoudakis*, 233 F.3d 113, 121 (1st Cir. 2000) (finding that witness's testimony that the defendant trusted her so much he was willing to commit crimes, including setting fire to a car, in her presence was not unfairly prejudicial).

---

facts of this case are more aligned with *Oury* than *Moreland*. Unlike *Moreland*, Cantwell did more than simply engage in an online exchange with the victim. Cantwell took specific actions designed to impact the victim's wife.

Simply put, evidence that the victim is married and has children is not "unfairly prejudicial" within the meaning of Rule 403. This is even more true in this case because Cantwell attempted to exploit the fact that the victim is married and has children. Cantwell attempted to use her as leverage to get the information he wanted from the victim by threatening to rape her or have his "incel" listeners rape her. Cantwell attempted to use the victim's children as leverage by calling the child abuse and neglect hotline to attempt to "destroy" the victim's life. GX 102. Cantwell used the victim's family as a weapon. Her testimony is not "unfairly" prejudicial simply because she is the victim's wife.

### D.  Conclusion.

Cantwell's motion to exclude testimony from the victim's wife—testimony that is relevant to an essential element of Count Four—should be denied.

September 14, 2020                                              Respectfully submitted,

                                                                Scott W. Murray
                                                                United States Attorney


                                    By:     /s/ Anna Z. Krasinski
                                            Anna Krasinski
                                            John S. Davis
                                            Assistant U.S. Attorneys
                                            53 Pleasant Street, 4th Floor
                                            Concord, NH  03301
                                            (603) 225-1552