UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                                                                          No. 20-cr-00006-PB

CHRISTOPHER CANTWELL

### DEFENDANT'S OBJECTION TO GOVERNMENT'S MOTION FOR TWO-WAY LIVE VIDEO TESTIMONY OF VICTIM'S SPOUSE

The government moved the Court for an order permitting live, two-way video testimony of a subpoenaed prosecution witness (identified as "the victim's spouse" in the government's pleading, but who the government also alleges is a victim herself) at the upcoming trial. The defendant, Christopher Cantwell, by and through his counsel, objects, as violative of his Sixth Amendment right to "physically [] face" the witnesses who testify against him. *U.S. Const., Am. VI*; *Coy v. Iowa*, 487 U.S. 1012, 1017, 1021, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988). Grounds follow.

I.   **Introduction**

A jury trial is scheduled to commence on Tuesday, September 22, 2020. On Thursday, February 17, 2020, after jury selection and five days before commencement of trial, the government filed a motion requesting an order permitting the live, two-way video conference testimony of a subpoenaed prosecution witness (the victim's spouse/alleged cyberstalking victim) at the upcoming trial. The government alleges that this witness risks unspecified "complications" should she contract COVID-19, and cites her physician's "recommendation" that she refrain from travel given her condition.

1

## II. Legal Argument

### a. The defendant has the right to physically face the witnesses against him.

In the ordinary case, the Sixth Amendment to the Constitution gives the defendant the right "physically to face" the witnesses who testify against her. *Coy v. Iowa*, 487 U.S. 1012, 1017, 1021, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988) (holding that placing a screen in front of two child witnesses to block their view of the defendant while they testified against him violated the Sixth Amendment). The idea is that insisting that witnesses testify "in the presence of the person [they] accuse" helps ferret out the truth and lowers the risk of wrongful conviction. *Id*. at 1020. As the old wisdom goes, it is "more difficult to tell a lie about a person 'to his face' than 'behind his back.'" Id. at 1019 ("A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.'" (*quoting* Zechariah A. Chafee, Jr., *The Blessings of Liberty* 35 (1956)). And, "even if the lie is told, it will often be told less convincingly" under the gaze of the defendant and jurors who can see the fibber's demeanor with their own eyes. *Id.* (explaining that the Constitution prescribes face-to-face confrontation as the best way to "confound and undo the false accuser" even if it might "upset" honest victims who take the stand to implicate the guilty). *United States v. Cotto-Flores*, 970 F.3d 17, 31-32 (1st Cir. 2020).

### b. The government's reliance on *Cotto-Flores*, a child sexual assault case involving a statute permitting minor witnesses in such cases to testify remotely as long as certain findings are made, is inapposite.

In 1990 Congress enacted a statute, 18 U.S.C. § 3509(b), to provide alternatives to in-person testimony in child sexual abuse cases. *See* Child Victims' and Child Witnesses' Rights

Act of 1990, Pub. L. 101-647, § 225, 104 Stat. 4789, 4798 (Nov. 29, 1990).[1] In accord with this law, in order to protecting minor victims of sex crimes from further trauma and embarrassment, the First Circuit in certain cases permits minor sexual assault victims to testify by closed circuit television, from another room in the courthouse, "as long as the minor still testifies under oath, subject to live cross-examination, and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." *Cotto-Flores*, 970 F.3d at 32 (internal quotation marks omitted); *see also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 851, 857, 102 S. Ct. 2613 (1982).[2]

The instant case is a not a child sexual assault matter, it does not involve a child witness,[3] and there is no similar statute permitting two-way video testimony at play here. More importantly, the government has not alleged facts supporting an order of two-way, live video testimony such as that which took place in *Cotto-Flores*. Even the arrangement contemplated by the First Circuit in child sexual assault cases requires a "finding of necessity" on a "case-specific" basis. *Cotto-Flores*, *id.* at 33; *Globe Newspaper Co.*, 457 U.S. at 855. The trial court must hear evidence and determine whether use of the [closed circuit television] procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Cotto-*

---

[1] 18 U.S.C. § 3509(b) provides two alternative to live in-court testimony in child assault cases: two-way closed circuit television testimony, and videotaped deposition testimony. 18 U.S.C. § 3509(b). Of note, the part of the statute governing two way closed circuit television testimony requires that the movant apply for such order at least 7 days before trial, unless the court finds on the record that the need for such an order was not reasonably foreseeable. 18 U.S.C. § 3509(b)(1)(A).

[2] In *Cotto-Flores*, cited by the government, the First Circuit reversed, finding that the trial court did not make the requisite finding that the child witness could not communicate in the defendant's presence because of fear of the defendant. *Cotto-Flores*, 970 F.3d at 43-61.

[3] The out-of-state witness at issue is a healthy adult female, fully able to travel to New Hampshire for trial.

*Flores*, *id*. at 33; *Globe Newspaper Co.*, *id*. at 855. This entails two key findings: first, that the minor witness would be "traumatized, not by the courtroom generally, but by the presence of the defendant"; and second, "that the emotional distress suffered by the child witness in the presence of the defendant is more than . . . mere nervousness or excitement or some reluctance to testify." *Globe Newspaper Co., id*. at 856 (internal quotation marks omitted). This approach is supported as well by the U.S. Supreme Court's decision in *Maryland v. Craig*, 497 U.S. 836 (1990), wherein the Court held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial *only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.*" *Id*. at 850 (emphasis added). The statute, 18 U.S.C. § 3509(b), provides the policy framework for allowing video testimony, and requires additional, specific findings (*i.e.* the child witness' fear of the defendant, and that the emotional distress caused by such fear transcends mere nervousness or reluctance to testify) before allowing such testimony. *Cotto-Flores*, 970 F.3d at 33; 18 U.S.C. § 3509(b)(1)(B).

> **c. The government's reliance on the *Donziger* case is similarly inapposite, as an entirely different standard was utilized in that case, similar to the standard for Rule 15 deposition testimony, and in that case there had already been a sworn deposition in which Donziger participated.**

The government cites the *Donziger* case in which a 72-year-old witness with an undisclosed medical condition[4] was permitted to testify via Zoom in a criminal contempt prosecution in the Second Circuit (Southern District of New York), due to the COVID-19

---

[4] The witness' particular medical condition was redacted by the district court in its opinion. The defense assume that the 72-year-old *Donziger* witness' medical condition was of a graver nature than that of the witness in the instant case.

4

pandemic. *United States v. Donziger*, No. 19-CR-561 (LAP), 2020 U.S. Dist. LEXIS 157797 (S.D.N.Y. Aug. 31, 2020).

In determining whether to permit testimony by two-way video, courts in the Second Circuit have applied the rules used in connection with Rule 15 depositions and allowed video testimony "only when (1) the witness's testimony is material; (2) the Government has made good-faith and reasonable efforts to obtain the witness's presence and is unable to do so (that is, the witness is 'unavailable' within the meaning of the case law), and (3) allowing testimony by such means furthers the interests of justice." *Donziger*, 2020 U.S. Dist. LEXIS 157797 at *6-7; *United States v. Mostafa*, 14 F. Supp. 3d 515, 521 (S.D.N.Y. 2014); *accord United States v. Buck*, 271 F. Supp. 3d 619, 622-623 (S.D.N.Y. 2017).

It was in the context of this standard that the *Donziger* court permitted the witness to testify via two-way live video. *Donziger*, 2020 U.S. Dist. LEXIS 157797 at *6-7. The facts in *Donziger* are further distinguished by the fact that the witness in that case had already given sworn deposition testimony relating to the very same subject matter on which he was expected to testify at trial, and had made a sworn statement. *Id*. at *7. Notably, the witness had already been subject to cross-examination by Donziger (an attorney) at that deposition. *Id.*

### d. Under either standard, the government's motion fails and should be denied.

It is not clear from the government's motion which standard it seeks to have the Court here apply: 1) the standard from the First Circuit *Cotto-Flores* case, where the Court would have to find that the witness is traumatized by the defendant, and that the emotional distress suffered by the witness in the presence of the defendant is more than mere nervousness or excitement or some reluctance to testify, or 2) the standard from the Second Circuit *Donziger* case, which requires findings of materiality, unavailability, and that allowing two-way live video testimony

furthers the interests of justice. *Cotto-Flores*, 970 F.3d at 33; *Donziger*, 2020 U.S. Dist. LEXIS 157797 at *6-7. Under either standard, the government's motion fails.

There is no suggestion by the government that the witness in this case is traumatized by the defendant (whose very existence was unknown to her until recently), or that her that trauma causes her such emotional distress that she is unable to communicate in his presence.

There is also no credible evidence before the Court that the witness is unavailable and unable to travel to New Hampshire safely. And as the Court reasonably concluded when ruling on the government's motion for Rule 15 deposition, there is no credible evidence before the Court that the witness' health would be endangered by travel to New Hampshire, by either airplane or automobile.[5] The witness' physician in his/her brief statement cites typical symptoms of the witness' (quite common) condition as reasons why he "recommend[s] that [witness] refrain from travel." *Government's Motion for Two-Way Live Video Testimony of Victim's Spouse*, p. 2. There is no data to suggest that persons with the witness' medical condition are at increased risk of severe illness from COVID-19 (the Centers for Disease Control and Prevention list includes cancer, chronic kidney disease, COPD, obesity, serious heart conditions, sickle cell disease, and diabetes mellitus).[6] Any scientific data backing the government's contention that

---

[5] The Court made a finding in relation to the government's motion that the witness' testimony met the threshold for relevance. Nevertheless the defendant continues to object to its relevance on the same basis as previously set forth in his motion in limine to exclude her as a witness. Doc. 72.

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed September 20, 2020).

persons with such conditions *might* be at increased risk is, according to the Centers for Disease Control and Prevention, "mixed."[7]

### III.   Request for Relief

For these reasons and others, the defendant, Christopher Cantwell, objects to the government's motion to permit the two-way video testimony of a witness and for such otrher relief as may be deemed just.

Respectfully submitted,

Date: September 20, 2020

*/s/ Jeffrey S. Levin*
Jeffrey S. Levin
N.H. Bar No. 12901
*/s/ Eric Wolpin*
Eric Wolpin
N.H. Bar No. 18372
Assistant Federal Defender
Federal Defender Office
22 Bridge Street
Concord, NH 03301
Tel. (603) 226-7360
E-mail: Jeff_Levin@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that the above document was served on September 20, 2020 in the manner specified herein: provided to government's counsel via CM/ECF.

*/s/ Jeffrey S. Levin*
Jeffrey S. Levin

---

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last accessed September 20, 2020).