**\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO AUGUST 2, 2021**

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * * *
                                   *
UNITED STATES OF AMERICA           *
                                   *   20-cr-06-01-PB
          v.                       *   August 31, 2020
                                   *   1:01 p.m.
     CHRISTOPHER CANTWELL          *
                                   *
* * * * * * * * * * * * * * * * *


          TRANSCRIPT OF TELEPHONE FINAL PRETRIAL CONFERENCE
              BEFORE THE HONORABLE PAUL J. BARBADORO
```

APPEARANCES:

For the Government:        John S. Davis, AUSA
                           Anna Z. Krasinski, AUSA
                           U.S. Attorney's Office


For the Defendant:         Eric Wolpin, Esq.
                           Jeffrey S. Levin, Esq.
                           Federal Defenders Office



Court Reporter:            Susan M. Bateman, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

```
 1                     P R O C E E D I N G S
 2              THE COURT:  All right.  So I'll remind everybody
 3   that we have a record for this and all of our conferences.
 4              I won't require the parties to commit on anything
 5   on this issue yet because I gave you some additional time, but
 6   do you have anything to report on what your current thinking
 7   is about the alternatives we discussed about the confidential
 8   informant issue?
 9              Let's hear from the government and then the
10   defense.
11              MR. DAVIS:  Judge, we have just corresponded by
12   e-mail recently.
13              The government would ask the Court to do an
14   in camera ex parte interview of the witness by telephone when
15   that can be arranged.  The witness would be under oath and a
16   transcript made.  The defense could provide a request for
17   questions to the Court in advance that the Court could either
18   ask or not ask and we would agree those could be ex parte and
19   under seal, and then the Court could decide what disclosures
20   if any are required.
21              We would agree to that procedure.
22              THE COURT:  All right.  Anything from the defense?
23   Again, you don't have to tell me anything if you don't want
24   to.
25              MR. WOLPIN:  No, your Honor.  This is Eric Wolpin.
```

1           Our proposal has been to have the witness on the
2   phone, to have the parties on the phone, to put the individual
3   under oath without obviously providing us an identity at that
4   time, allowing the parties to ask questions relevant to the
5   issue at hand only limited as far as his contact with Cheddar
6   Mane.  Allow us to do that questioning, them to do that
7   questioning, make sure that's fleshed out, have a transcript
8   provided and provide that to the Court, and move from there.
9           Obviously there's a difference of opinion at this
10  point as to whether the questioning should be occurring by the
11  Court or through the parties, and I think that's the
12  distinguishing factor between our two requests.
13          THE COURT:  I get it.  I mean, it would certainly
14  be easier for me to have you do the questioning, and I
15  understand why counsel might want to do the questioning.
16          On the other hand, the purpose of this would be
17  simply to try to gather some basic information about what
18  knowledge the informant has or doesn't have.
19          But I will ask you to just follow through and
20  submit in a very summary way each of your positions in a
21  filing, and then I'll make a decision about how to proceed
22  from here.
23          I was hopeful there would be some agreement, but it
24  doesn't surprise me that there isn't.  I think both proposals
25  strike me as reasonable efforts to try to reach some -- gather

1   some additional information to make it clearer what the
2   informant knows and doesn't know and could or couldn't
3   contribute to any possible cross-examination.
4           So I'll just ask you to submit that in writing and
5   then I'll make a decision and issue a short order addressing
6   the issue and specifying our next steps.
7           Anything anybody wants to say about the informant
8   issue?  No?  Okay.
9           Let's go on to voir dire.
10          I've looked at the proposals from Mr. Wolpin.  I
11  don't have any objection to them.
12          Does the government have any objections to the
13  modified voir dire that he's suggesting?
14          MR. DAVIS:  No.
15          MS. KRASINSKI:  No, your Honor.
16          THE COURT:  No?  Okay.
17          Hang on just one second.  For the benefit of the
18  reporter, we had both prosecutors saying no is what I heard
19  anyway.
20          Okay.  Now, Mr. Wolpin, I know from my clerk that
21  you are going to be requesting an additional instruction -- an
22  instruction in addition to the question to address this
23  problem that all of us are concerned about, which is we don't
24  want jurors to go out and attempt to conduct their own
25  investigation.  I warn them off from that when they're here in

1   the courtroom, but I think you're proposing that we warn them
2   off in the written instructions which is something that we can
3   do if the parties think it makes sense.
4           The other thing we could do is simply omit any
5   identifying information about the case other than its proposed
6   start date, and that way not only would they not -- they
7   wouldn't be able to do any investigation.  That was a thought
8   I had is just send them you're expected to -- required
9   attendance for a jury selection on September 15th for a trial
10  beginning on September 22nd and ending on September 30th.
11  That wouldn't give them any information to search unless they
12  start searching the court docket and guessing on which case is
13  set up for trial.
14          Mr. Wolpin, I think I'm trying to anticipate what
15  my clerk told me was a request on your part.  What do you
16  think about that as an alternative, just not even putting
17  anything in, the name and number of the case?
18          MR. WOLPIN:  My question had been because I didn't
19  have a good sense of what was going out to potential jurors,
20  and the response we all received from Tracy earlier today,
21  apparently that is the typical procedure is that they are not
22  provided the name of the case with the notice.  So I guess my
23  fear had been they would be receiving the name and the case
24  and I would want to make sure.
25          It's a little odd because the voir dire questions

```
 1   we've provided to them asks them whether they've participated
 2   in the case's investigation or know anything about the case,
 3   which again is a little difficult to reconcile what was really
 4   being provided to them then.
 5            THE COURT:  Well, we could -- let me just --
 6   Mr. Wolpin, you raised a good point.  If we were to omit all
 7   identifying information about the particular case, we would
 8   omit those portions of questions that ask for familiarity with
 9   the case as well, and we would have to do all of the
10   questioning about case familiarity in court.
11            In some ways it might cause a few extra jurors to
12   have to be here who will be relatively easily excused.  On the
13   other hand, it avoids the problem of somebody trying to find
14   out about the case beforehand.
15            I'm willing to do it either way.  I'm willing to
16   include the name of the case and instruct them not to do any
17   work to try to investigate or I'm willing to omit references
18   to the particular case and also modify the proposed voir dire
19   to defer questioning about familiarity with the case until we
20   give them some information about it in court.
21            MR. WOLPIN:  I think we can certainly make a
22   decision quite quickly as to one or the other.  I mean, my
23   instinct is if the name isn't on it, that's probably
24   sufficient, but give me -- I'll take a moment to think about
25   it.
```

1           THE COURT:  Yeah.  All right.  What you do is you
2    and Mr. Levin meet and take a position and share it with the
3    government.  I don't know if the government has any reaction
4    to this.
5           One option is to list the case.  Ask for
6    familiarity with it.  So like -- I don't follow the news so I
7    didn't know who Christopher Cantwell was and I still don't
8    except, you know, people in the court have mentioned that he's
9    associated with the Charlottesville thing.  I imagine most
10   people wouldn't pick up anything on the name, but some might.
11   So if we have the name in there, then we have to have
12   questions about it.  If we don't have the name in there, we'll
13   just defer questioning until they're in court.
14          Either prosecutor, do you have any thoughts about
15   that?
16          MR. DAVIS:  Judge, I think it makes sense not to
17   give them the name.  I have to talk to Ms. Krasinski, but that
18   makes the most sense to me.  They may assume there could be
19   multiple trials and that they can't figure it out or try to
20   figure it out.  That seems to me better than giving them the
21   name and then two weeks of potential Googling to muddy the
22   waters.
23          THE COURT:  Yeah, the temptation gets to be too
24   great even if you instruct, you know?
25          MR. DAVIS:  Right.

| | |
|---|---|
| 1 | THE COURT:  Natural curiosity is what it is. |
| 2 | I think once they're in court and they're told |
| 3 | they're being selected and they're instructed by me that they |
| 4 | may not do something, they're much more likely to comply than |
| 5 | if they just get an e-mailed instruction on it. |
| 6 | That would be my default position, but I would ask |
| 7 | defense counsel to confer among yourselves, exchange an e-mail |
| 8 | with the government, and by the end of the day inform my clerk |
| 9 | as to which option you're choosing, but I would recommend that |
| 10 | we omit identifying information and questioning that calls for |
| 11 | them to disclose knowledge of a case they don't know anything |
| 12 | about. |
| 13 | MR. DAVIS:  Judge, I'm pleased to say that Ms. |
| 14 | Krasinski agrees and we are unanimous on the government's |
| 15 | side. |
| 16 | THE COURT:  All right.  I think Mr. Wolpin and Mr. |
| 17 | Levin will be, too, once they have a chance to confer, but I |
| 18 | know they're not together and it's a little harder to -- you |
| 19 | know, I don't want people to feel they're being railroaded |
| 20 | into anything. |
| 21 | So you think it over, Mr. Wolpin, but that would be |
| 22 | my preference.  We'll just -- once I have them in court and I |
| 23 | look them in the eye and I instruct them, I feel like I'm |
| 24 | going to get a greater likelihood of compliance on things like |
| 25 | that.  So that's my preference. |

1  Okay. Anything else about the voir dire? We want
2  to lock this down because we're going to start sending out
3  information.
4  You saw -- you know, we're very fortunate that we
5  have such an incredibly able staff here. Our chief deputy
6  clerk has laid out a timeline which to me sounds entirely
7  sensible and involves relatively quickly providing the
8  questionnaire on to the website and a link to be provided to
9  the jurors to complete the questionnaire. So I do want to get
10 going on that.
11 So give me what you've got by the end of the day,
12 we'll finalize a list, but my plan right now unless the
13 defense presents a different view is to not identify,
14 otherwise accept the proposals that the defense is proposing,
15 modify the first instruction slightly to just say your
16 attendance will be required for jury selection on the 15th for
17 a trial beginning on September 22nd and ending on September
18 30th, and then ask the questions as proposed but delete any
19 questions that call for them to express whether they have
20 knowledge about a particular case or not.
21 So that's what I propose to do unless I hear
22 something different from the parties by the end of the day.
23 Anything else on the jury questionnaire?
24 MR. WOLPIN: No.
25 MR. DAVIS: No.

1          THE COURT:  Okay.  Good.
2          All right.  So we've covered the confidential
3  informant.  We've covered the voir dire.
4          The proposed jury instructions -- thank you.  I
5  normally don't devote a lot of mental energy to considering
6  proposed jury instructions for a case until the trial starts
7  because I've just been burned so many times over the last
8  couple of decades where I do all this work on a case where the
9  parties tell me the case is definitely going to trial, and
10 then I work on it and then it resolves.
11         This case I think is different.  As far as I can
12 tell, this is a pretty much guaranteed trial so I'm going to
13 act on that assumption.
14         And I will set up a telephone conference for us on
15 Tuesday and we will, next Tuesday, and we will have a
16 discussion about, a preliminary discussion about jury
17 instructions.  And then by shortly, the end of the week of
18 jury selection, I'm aiming to have a full set of proposed
19 charges together so that you can have a good idea of how I'm
20 looking at these particular issues before the evidence
21 actually starts to come in.  Obviously I may need to modify
22 things on the fly, but this is a case where I'm going to aim
23 to have the jury instructions pretty much locked down on
24 anything except unexpected matters before the trial begins.
25         So I won't say anything about jury instructions

1  today because I have not yet started to study the statute.  I
2  will be interested in having a discussion -- a preliminary
3  discussion with you about them on Tuesday and then a follow-up
4  discussion at the end of the week after -- see, I've got to
5  look at my schedule here because I'm going to be out on
6  vacation the week before the evidence starts.  Let's see.
7            So, yeah, I am out.  I'm going to be out of the
8  office hopefully from the 9th until jury selection, and then I
9  will be back in the office on the 17th.  So, yeah, we could
10 do -- let's have a -- let's plan to have a discussion about
11 the instructions on the 8th.
12           Vinny or Jen, if you could set up a telephone
13 conference on that on the 8th.
14           And then we will have another discussion about jury
15 instructions.  Let's set something up on the 18th of
16 September.  All right?
17           I do not have anything else to say about the jury
18 instructions right now.  Is there anything anyone wants to say
19 about jury instructions?  No?
20           MR. DAVIS:  No, your Honor.
21           MR. WOLPIN:  No, your Honor.
22           THE COURT:  Okay.  Good.
23           I wanted to talk to you again and make sure
24 everybody is on track with respect to the compliance with
25 out-of-state witnesses and our proposals on self-quarantining

1 and testing.

2 Has the government finalized its contract so it can
3 get its witnesses tested before trial?

4 MR. DAVIS: I don't know that it's finalized,
5 Judge. I actually don't have the most recent update on that,
6 but we certainly are well aware of it and don't expect any
7 problem in getting it in place.

8 THE COURT: Okay. I will depend on you, Mr. Davis,
9 to make sure that that's done, and if you'll share whatever
10 information you have with the defense. And if the defense --
11 any witnesses it has I would like them to comply with the same
12 practices.

13 So if there's going to be some kind of problem for
14 the defense in doing that, I'm going to need to know well in
15 advance of the trial if you need to get me involved in
16 something making sure that that happens.

17 So I'll expect Mr. Davis to have in place
18 procedures to ensure that all his witnesses will be available
19 when we need them to be. I ask him to share the basic
20 approach he's taking with respect to contractors for testing
21 with the defense and ask the defense to arrange for similar
22 procedures for its potential witnesses so we don't have any
23 delays dealing with quarantining and testing of out-of-state
24 witnesses.

25 I know the government has produced a witness list.

1  The defense will be filing one soon in accordance with the
2  pretrial order if they haven't already.  I haven't check the
3  deadline.
4              Is there anything else anyone wants to say about
5  witness lists?
6              MR. WOLPIN:  No.
7              THE COURT:  No?
8              And I think we've talked over the exhibit procedure
9  pretty carefully.  Is there anything anybody wants to say
10 about that?  No?
11             MR. WOLPIN:  No.
12             THE COURT:  Are there any issues that anyone wants
13 to take up with me about the case?
14             MR. WOLPIN:  No, your Honor.
15             THE COURT:  This is great.  I love this, how well
16 prepared everybody is, because I'm assuming if you don't have
17 a problem it's because you've anticipated them and worked them
18 out.
19             All right.  I don't think there's anything else I
20 need to talk with you about today.  I thought we could next
21 Tuesday do a preliminary discussion on jury instructions and
22 any other issues that people have with respect to the jury
23 selection process on the 15th.  Then I'll have a last
24 telephone conference with you on the 18th to try to finalize
25 jury instructions and take up any other issues that come up

1  before the start of evidence.
2          Otherwise, as far as I can understand, we're good
3  to go and there aren't any particular unusual issues we
4  haven't yet taken up.
5          Is there anything else?
6          MR. DAVIS:  Yes, Judge.
7          Could I just note the government does expect to
8  file two motions in limine.  They're due Thursday, but just to
9  have that on your radar.
10         THE COURT:  Well, we could set up some time on
11 Tuesday for anything that's filed before that date, and then
12 we can talk on the 18th about motions in limine so you at
13 least have a day or two to -- and again my -- I think my
14 practices are well-known to people.  I have a very strong bias
15 of issuing only tentative rulings on motions in limine unless
16 someone persuades me that they will cause a substantial
17 inconvenience if I don't rule on them immediately.  So I'm
18 generally willing to give some tentative views on motions in
19 limine, but I rely on my ability to make the right decision
20 when I have the greatest amount of information, which is
21 usually right before the evidence is offered.
22         So feel free to file them.  I'll comment on them.
23         MR. DAVIS:  Judge, not to whine, but I do make one
24 special request, and that is if we do an argument on the
25 motions in limine, that we not do it on Tuesday of next week,

1  and I ask that because I'm going to be on vacation between
2  Tuesday and Friday of next week.
3              THE COURT:  Okay.
4              MR. DAVIS:  I'll be in-state and I can call in, but
5  on Tuesday I'm very much intending to be on a boat ride with
6  my wife that I promised her for about 25 years and don't
7  expect to be able to call in on Tuesday.
8              I'm filing the motions in limine so I probably
9  should argue them.
10             THE COURT:  Okay.  You're not -- Ms. Krasinski is
11 doing the jury instructions?  Is that how you divided things
12 up?
13             MR. DAVIS:  Yes.
14             THE COURT:  Okay.  That's fine.  We won't talk
15 motions in limine on the 15th, but we will -- or excuse me, on
16 the 8th.  We will talk potentially -- at least have a
17 preliminary discussion about the jury instructions on that
18 date because I'm going on vacation on the 9th and I really am
19 not supposed to be back until the 16th, but I'm going to come
20 back a day early and do the jury selection on the 15th.  So
21 that's fine.
22             MR. DAVIS:  Thank you.
23             THE COURT:  All right.  Anything else anyone wants
24 to talk about in this case?
25             MR. WOLPIN:  No, your Honor.

1          THE COURT: All right. I think we've done a lot of
2 pretrial work. Our case managers and our chief deputy clerk,
3 they've really gone the extra mile to help this thing run
4 smoothly.
5          So we'll talk again on the 8th and take it from
6 there, but thank you for your help and we'll talk again on the
7 8th and then again on the 18th, and then we should be ready to
8 go on the 22nd.
9          Okay. That concludes the hearing.
10          Thank you everybody.
11          MR. WOLPIN: Thank you.
12          MR. DAVIS: Thank you.
13          (Conclusion of hearing at 1:23 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25

1      C E R T I F I C A T E

4      I, Susan M. Bateman, do hereby certify that the
5 foregoing transcript is a true and accurate transcription of
6 the within proceedings, to the best of my knowledge, skill,
7 ability and belief.

10 Submitted: 5-4-21          /s/    Susan M. Bateman _____
                                    SUSAN M. BATEMAN, RPR, CRR