**\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO AUGUST 2, 2021**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   20-cr-06-01-PB
            v.                      *   September 25, 2020
                                    *   8:45 a.m.
    CHRISTOPHER CANTWELL            *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF JURY TRIAL
DAY FOUR - MORNING SESSION
BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:


For the Government:          John S. Davis, AUSA
                            Anna Z. Krasinski, AUSA
                            U.S. Attorney's Office




For the Defendant:           Eric Wolpin, Esq.
                            Jeffrey S. Levin, Esq.
                            Federal Defenders Office




Court Reporter:              Susan M. Bateman, RPR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, NH 03301
                            (603) 225-1453

I N D E X

| WITNESS: | Direct | Cross | Redirect | Recross |
|----------|--------|-------|----------|---------|

CHRISTOPHER CANTWELL

(Previously transcribed under separate cover)

```
 1                   P R O C E E D I N G S
 2              (IN COURT - NO JURY PRESENT)
 3         THE COURT:  All right.  Do you want to discuss the
 4   jury instructions with me?
 5              Just to set the stage, I submitted a first draft of
 6   the instructions to the parties prior to trial.  I provided
 7   them with a revised draft yesterday and met after the close of
 8   court with a representative from each side with the revised
 9   instructions.  We discussed several modifications that the
10   parties were proposing, most of which I agreed to.  I put
11   together another revision and provided it to the parties at
12   about 8 o'clock today.
13              I tried to accurately do what I told you I would do
14   last night, but I might not have.  If I haven't or if there
15   are other issues, I would welcome a chance to hear you on
16   them.  Of course you'll preserve any arguments you have such
17   as I know the government, excuse me, the defense will register
18   an objection to my instruction about provocation not being a
19   defense.  You don't need to preserve that here.  You've made
20   that very clear to me.
21              But if there's any kind of constructive change that
22   you didn't raise with me yesterday or that you don't think I
23   executed faithfully, I'm happy to hear first from the defense
24   and then the government.
25         MR. LEVIN:  Your Honor, I don't have my finger on
```

1   it, but I do recall that there is some case law that talks

2   about intent to extort.  It says here:  Means to act with the

3   intent to obtain something of value from another person with

4   that person's consent but induced by threat and force,

5   violence or fear.

6          I thought there was a part of it that should be

7   wrongfully, you know, something that you're not entitled to.

8          THE COURT:  Yeah.

9          MR. LEVIN:  If somebody takes your -- steals your

10  purse and you threaten to get it back, that's not extortion.

11  So there has to be a wrongful element of the request.

12         THE COURT:  Okay.  I think that's an interesting

13  point.  I wish we had talked about it last night.

14         MR. LEVIN:  It just occurred to me, your Honor.

15  I'm sorry.

16         THE COURT:  Yeah, that's all right.  I will -- I

17  think that is an interesting point.

18         So the argument would be say, for example, you're

19  trying to use self-help to get back your own property.  Can

20  you commit this crime of extortion as threat by threatening to

21  kill the person that wrongfully stole your car if he doesn't

22  give it back to you.

23         MR. LEVIN:  Right.

24         THE COURT:  And you're saying I don't think you can

25  commit the crime if the evidence is that it's your property

1    and you have a right to it even if you use threatening means

2    to get it back.

3                 MR. LEVIN:  That's correct.

4                 THE COURT:  Okay.  Well, that's an interesting

5    theory.  I'll try to explore it.

6                 Have you got something to say on that point?

7                 MR. DAVIS:  Only, Judge, there is a definition in

8    the Hobbs Act that's useful I think.  So 18 U.S.C. Section

9    1951.

10                THE COURT:  My definition of threat comes from the

11   Hobbs Act.  Is there an intent to extort definition in the

12   Hobbs Act?

13                MR. DAVIS:  I'm reading from 1951(b)(2):

14                The term extortion means the obtaining of property

15   from another with his consent induced by wrongful --

16                THE COURT:  Yeah, that's what I'm recalling.

17                MR. LEVIN:  Yeah, that's what I was thinking.

18                MR. DAVIS:  We would not object to that.

19                THE COURT:  So we add the word wrongful.

20                Unfortunately, I didn't bring my reading glasses

21   down.

22                Vinny, would you -- for your sake -- I've got them

23   up in the my office.  Would you run up there and get them for

24   me?  You can, you know, just touch them with a --

25                THE CLERK:  I have an extra pair of yours.

1          THE COURT:  No, that's all right.  Can you get mine

2     for me?  These are mine?  Okay.  I've got like 20 pair around

3     here.  Thank you.

4          MR. DAVIS:  And we did propose the use of wrongful

5     in our proposed instruction.

6          THE COURT:  Yeah.  Let me just figure out the exact

7     place to put it.

8          By the way, I'm not absolutely convinced on the

9     hypothetical that I presented that you could not be found

10    guilty of extortion under those circumstances because the

11    question of what's wrongful, can the threat be wrongful, force

12    that you're not legally entitled to use, can you threaten

13    force that you -- because you can't use deadly force on

14    somebody to recover your own property, and so threatening the

15    use of deadly force to recover your own property -- at least

16    there's an argument, I haven't studied it, that that would be

17    a wrongful threat.  I don't think you can simply say if you're

18    entitled to it that it wouldn't be wrongful because the means

19    can make it wrongful even if there's an entitlement to the

20    property.

21          Do you see what I'm saying?

22          MR. DAVIS:  Yes.

23          THE COURT:  So in this case if it were to be argued

24    that he has a right to be left alone and not have his site

25    harassed, and he can therefore threaten to do anything he

1   wants to stop that and it's not an extortion or threat, no,

2   that doesn't strike me as the way the law would work, but I'm

3   happy to insert the word wrongful at the appropriate place.

4            So to act with an intent to extort means the -- how

5   about this:  To act with the intent to wrongfully obtain

6   something of value from another person with that person's

7   consent induced by threat, force, or fear, or should it be

8   means to act with the intent to obtain something of value from

9   another person with that person's consent but wrongfully

10  induced by threat?

11           Where do you want wrongfully?

12           MR. LEVIN:  In the statute it says, "Induced by

13  wrongful use of actual or threatened force, violence, or fear,

14  or under color of official right."

15           And I'm presuming "color of official right" means

16  pretending that you have some sort of legal right to it, I

17  guess.

18           THE COURT:  All right, but we're not dealing with

19  the Hobbs Act here.

20           MR. LEVIN:  Right.

21           THE COURT:  So I'm trying to figure out where you

22  want me to insert the term here.

23           MR. LEVIN:  Induced by wrongful use of threatened

24  force, violence, or fear.

25           THE COURT:  Should wrongful be used in describing

1  the threat or should wrongful be used in describing the

2  intention with which the threat is made?

3           MR. LEVIN:  I think it's --

4           THE COURT:  Give me the definition of the Hobbs

5  Act.  Give me the cite to the Hobbs Act again.

6           MR. DAVIS:  It's 1951(b)(2), and it uses it in the

7  second part of the definition.  "The term extortion means the

8  obtaining of property from another, with his consent, induced

9  by wrongful use of actual or threatened force, violence,

10  fear --"

11           THE COURT:  So it describes the use of force, all

12  right?  So wrongful use -- so force can be wrongful even if

13  you have a right to the property if the force is not lawful

14  force, right?

15           MR. DAVIS:  Right.

16           THE COURT:  So that would be wrongful.  So it

17  clearly does refer not to in the hypothetical I presented

18  merely whether the person has a right to recover the property

19  but whether they have the right to use the means that's being

20  threatened, right?

21           MR. DAVIS:  Right.

22           THE COURT:  So that could mean if they are

23  unlawfully -- if they're threatening to use force that they

24  cannot lawfully use to obtain property, even if it's their

25  own, it still would qualify under that definition, right?

1          MR. DAVIS:  That's correct.

2          THE COURT:  But here we're talking about not the

3    crime of extortion.  We're talking about the crime of

4    threatening to extort, right?  So I'm trying to figure out --

5    extortion by threat, rather.

6          So if I look on page 13 -- let me hear, Mr. Levin,

7    where on page 13 or page 14 should I insert the word wrongful

8    or wrongfully?

9          MR. LEVIN:  Well, first of all, on page 13 in that

10   first section -- no.  I'm looking at page 14, "To act with an

11   intent to extort means to act with the intent to obtain

12   something of value from another person with that person's

13   consent but induced by," and then you would insert, "the

14   wrongful use of threatened force, violence, or fear."

15         THE COURT:  Okay.  Would that satisfy you?  Is that

16   where you want wrongful?

17         MR. LEVIN:  Yes.

18         THE COURT:  All right.

19         MR. DAVIS:  I think my only addition would be

20   actual or threatened.  Actual or threatened use.

21         MR. LEVIN:  By wrongful use of actual or threatened

22   force?

23         MR. DAVIS:  The wrongful use of actual or

24   threatened force, violence, or fear.  I think that's correct.

25         MR. LEVIN:  Yeah.

1           THE COURT:  Okay.  Well, Mr. Davis, so one of the

2     reasons I didn't put that in was because you can commit this

3     crime by using force, but this indictment doesn't charge that

4     Mr. Cantwell ever used force.

5           Am I making too much of that distinction?

6           MR. DAVIS:  No, but arguably he actually used fear.

7     He induced fear and he followed through.  There was an actual

8     use of fear.

9           THE COURT:  Okay.  That's fair.

10          So propose the language you want to use, Mr. Davis,

11     to modify what Mr. Levin suggested.

12          MR. DAVIS:  So on page 14 the first clause as is

13     all the way through with that person's consent as is, and

14     then, but induced by the wrongful use of actual or, and then,

15     threatened force, violence, or fear.  So just insert, the

16     wrongful use of actual or.

17          THE COURT:  Give it to me one more time.

18          MR. DAVIS:  So insert -- where it says, but induce

19     by threatened force now, insert between by and threatened, so

20     it reads, but induced by the wrongful use of actual or.

21          MR. LEVIN:  We agree with that.

22          THE COURT:  All right.  Where there's agreement,

23     I'm inclined to go along.

24          So that it's clear -- I mean, when I tried to

25     square grammatically what you have jointly proposed with the

1    indictment, the one thing that doesn't work perfectly for me

2    is this instruction would allow the jury to convict on a

3    theory of actual use of -- I guess I'm having trouble with the

4    expression actual use of threatened force.  That seems to me

5    to be confusing.

6              MR. LEVIN:  I think it's the wrongful use of actual

7    or threatened, and that modifies force, violence, or fear.  I

8    don't think actual or threatened just modifies force.  That

9    would be the way I would read it.

10             THE COURT:  So this is a -- if I were construing a

11   statute this way, I would be saying this is a rule of the last

12   antecedent problem.

13             The way it's written without actual and the way I

14   understand it is, one way to do it is threatened force, the

15   other way of doing it is threatened violence, and the other

16   way of doing it is fear.

17             So the use of -- so another way to do this is the

18   wrongful use of threatened force, threatened violence, or

19   fear.

20             Do you see what I'm saying?

21             MR. LEVIN:  Yeah.

22             THE COURT:  I'm willing to do it that way, but if

23   you still prefer the way you've jointly proposed, I will defer

24   to the parties' joint view, but don't complain about it on

25   appeal when I've told you there's another way to do it and

1   you've told me that's what you want.

2          So the two ways I would think is the way you've

3   suggested, which I'm willing to defer to, or that it would be

4   say:  By the wrongful use of threatened force, threatened

5   violence, or fear.

6          Do you have a position on which of those you

7   jointly prefer?

8          MR. DAVIS:  Either is fine with the government.

9          MR. LEVIN:  I agree, your Honor.  I'm not wedded to

10  it.

11         THE COURT:  All right.  So I'm going to do it my

12  way then:  But induced by the wrongful use of threatened

13  force, threatened violence, or fear.  And that's a play off of

14  the Hobbs Act definition.

15         That's the only place where I need to make that

16  change, right?  Okay.  So I'm going to do it my way but by

17  agreement of the parties that it's an acceptable way.

18         All right.  Anything else anybody has for me?

19         MR. LEVIN:  Just wondering when you would like us

20  to put on the record our objection to the provocation is not a

21  defense instruction.

22         THE COURT:  I advise all defendants to put their

23  objections on after the instruction is given because there's

24  some troubling case law for the defense that can suggest that

25  you might waive an instruction.

1    Like in the event that I misread something, that

2    I've told you I'm going to do X but I actually say something

3    different to the jury, you really have to -- to make

4    bulletproof any appeal of the charge, you should wait till

5    after the instruction.  So once the instruction has been given

6    I would advise you to -- we'll put the headsets on and you can

7    say, Judge, I just want to preserve my objection to the use of

8    the provocation instruction because I don't believe it's

9    warranted to give a provocation is not a defense under these

10   circumstances, and that would preserve it.  So wait till

11   afterwards just to be sure.

12             MR. LEVIN:  I was hoping I would have an

13   opportunity to do it before because I was hoping I might

14   persuade you not to give the instruction.  Once the

15   instruction is given, it's too late for that.

16             THE COURT:  I mean, I think you already did once

17   last night off the record, but on the record do you have

18   something new to add or something different?

19             MR. LEVIN:  Yes, I would.

20             THE COURT:  Okay.  Well, we'll probably be in

21   charging right after lunch or at least having closings right

22   after lunch.  So at the lunch break we'll stop and you can

23   give me your new argument about provocation, all right?

24             MR. LEVIN:  Okay.  Thank you.

25             THE COURT:  Anything else?

1            MR. LEVIN:  No, your Honor.

2            THE COURT:  Okay.

3            MR. DAVIS:  Only, Judge, one on page 15.

4            THE COURT:  Yes.

5            MR. DAVIS:  The word between should be used to make

6    that Count 2 description clearer.  It should say between on or

7    about June 15th.

8            THE COURT:  Yes, I made that change in the draft,

9    it didn't get picked up, because that's the actual quote.

10           Isn't it between in or about in your indictment?

11           MR. DAVIS:  It is --

12           THE COURT:  I think you use between in or about.

13           MR. DAVIS:  It says between -- this is Count 2.  So

14   it's between on or about June 15th.

15           THE COURT:  What about Count 3?

16           MS. KRASINSKI:  He's right.  It's in.

17           THE COURT:  I tried to quote.  I quoted Count 3 as

18   between in or about, and you're telling me you did on or

19   about.  What's the superseding say?

20           MR. DAVIS:  So the superseding for present Count 2,

21   which is where I was raising this, is between on or about.

22           THE COURT:  All right.  And then tell me what Count

23   3 says.

24           MR. DAVIS:  Count 3 says between in or about June

25   15th.

1          THE COURT:  Okay.  So I've got it right on 3, and I

2     just should have between on or about on Count 2, okay?

3          MR. DAVIS:  Correct.

4          THE COURT:  Okay.  Good.

5          Yeah, because I caught that on 3, but I didn't go

6     back and catch it on 2.

7          Okay.  No other changes.

8          Let me see.  So I would ask you, one of you, to

9     take -- there are just two pages here.  Scan those and send

10    them to Lorraine and say those are two more changes that the

11    judge would like and could she send me an amended set.

12          The other thing is, have you folks prepared a

13    composite indictment yet?

14          MR. DAVIS:  Yes, we have.

15          THE COURT:  All right.  Could you scan that and

16    send it to her and ask her if she could draft me a verdict

17    form just setting forth Count 1, the description of the charge

18    the way it's charged in the indictment, Count 2, guilty, not

19    guilty, foreperson.  She knows how to set up a verdict form,

20    and if she could e-mail me a revised version of that.

21          Vinny, you can wait till we bring the jury in.  We

22    can get going and then you can do that at a break or once I

23    get the case started, okay?

24          Are we ready for the jury?  Okay.  Good.  Thanks.

25          (IN COURT - JURY PRESENT)

1     (Continued direct examination of Christopher Cantwell

2  previously prepared under separate cover)

3          THE COURT:  All right.  Does the government have

4  any rebuttal case?

5          MS. KRASINSKI:  No, your Honor.

6          THE COURT:  All right.

7          Members of the jury, you've now heard all the

8  evidence in the case that you're going to hear.  What's left

9  are closing arguments and jury instructions.

10          We will break until 12:45, you can have some lunch,

11  and I will have the closings, first the government's closing

12  and then the defense closing, and then a brief rebuttal

13  closing by the government.  Then we'll take another break.

14  I'll give you -- I'll read you the jury instructions that I

15  will also give you in paper when you deliberate, and then

16  you'll be free to begin your deliberations.

17          So have a nice lunch break.  We'll see you back

18  here at 12:45.

19          (IN COURT - NO JURY PRESENT)

20          MR. LEVIN:  Your Honor, the defense renews its Rule

21  29 motion on the same grounds as argued previously.

22          THE COURT:  All right.  And understood and

23  preserved, and I deny your motion.

24          Is there anything -- I have a verdict form.  It's

25  very straightforward.  You can just take a look at it.  If you

1     have a problem with it, let me know.  The instructions will be

2     as we agreed.

3             I'm sorry.  You wanted to present an argument on

4     the provocation defense instruction.

5             MR. LEVIN:  Yes, your Honor.  Just briefly.

6             THE COURT:  Everyone else can be seated.

7             MR. LEVIN:  We do object to the section of the

8     draft jury instructions on the bottom of page 20, top of page

9     21, the title is Provocation Not a Defense.

10            The problem with this instruction from our

11    standpoint is it doesn't define provocation.  It doesn't

12    define defense.  It's confusing.  It's misleading as to the

13    correct standard of the law or at least does not adequately

14    inform the jury on the law.

15            THE COURT:  All right.  At the break -- wait.  I'll

16    let you finish, but at the break I really need your help.  So

17    you need to give me an adequate definition of provocation that

18    you want me to -- that if I'm going to give it, you give me

19    the form that legally is sufficient.  Give it to me after the

20    lunch break so that I can consider it in light of the case

21    law.

22            It's not enough just to tell me you don't define

23    provocation.  You should say, I object to you giving the

24    instruction altogether, but if you are going to give an

25    instruction on provocation, here's what I legally think you

1    should give.

2              MR. LEVIN:   Okay.   I'm prepared to go into that.

3    That was just the beginning.

4              We're basing our objection on In Re:  Winship, 397

5    U.S. 358, a U.S. Supreme Court case which states that the

6    defendant has a due process right to insist that the

7    government prove beyond a reasonable doubt each and every

8    element of the crime with which he's charged.

9              From our standpoint, anything that lightens that

10   burden potentially violates due process.

11             We're citing also two cases from the Second

12   Circuit, U.S. versus Absolom, A-B-S-O-L-O-M, 305 Federal

13   Appendix 786.  That's a 2009 Second Circuit case.

14             And U.S. versus Abelis, A-B-E-L-I-S.

15             THE COURT:  Let me stop you.  I have a law clerk in

16   the room.

17             Please write down any case citations he gives

18   because I'm going to have to read them over the break.

19             MR. LEVIN:  U.S. versus Abelis, 146 F.3d 73.

20   Abelis is A-B-E-L-I-S.  It's a 1998 Second Circuit opinion.

21             I'm citing these for the proposition that a jury

22   instruction is erroneous if it misleads the jury as to the

23   correct legal standard or does not adequately inform the jury

24   on the law.

25             And the argument we're making is that while

1    provocation is not a complete defense to the charges in the

2    sense that if the government meets its burden of proving

3    beyond a reasonable doubt every element of the charges,

4    evidence of provocation -- I'm sorry.  In the sense that if

5    the government meets its burden of proving beyond a reasonable

6    doubt every element of the charges, evidence of provocation

7    does not negate criminal culpability.  However, it is

8    certainly part of a defendant's defense, and evidence of

9    provocation can be relied upon by the jury to determine

10   whether the government has met its burden to prove beyond a

11   reasonable document every element of the charges.

12            The defense has not --

13            THE COURT:  That completely -- I mean, I know

14   you're just reading something, your notes, but that completely

15   confuses me.  I don't understand what you're saying.

16            How does evidence of provocation help you

17   demonstrate to the jury that the government has not proved the

18   elements of its case?

19            I want to be clear.  I want help from the defense.

20   Explain to me the additional language you want.  But just

21   going on like this really isn't helping me at all.  So help me

22   understand.

23            You apparently have a theory that has yet to be

24   articulated, despite my raising it with you over and over and

25   over again during the course of the trial, as to how -- you

1    raised in your opening statement, which was obviously a

2    provocation defense, how that provocation defense undermines

3    the government's ability to prove its case.  That's what I --

4    I've been asking for this for days, so please answer it now so

5    that I can understand your argument.

6                    MR. LEVIN:  Okay.  I will.

7                    Your Honor, this was an antagonistic relationship

8    between these two men.  This was a relationship based on

9    insults back and forth.  It ramped up to a particular level.

10                   In the jury instructions which the Court has

11   drafted it says:  In determining whether the defendant's

12   communication was sent with the intent to extort, you may

13   consider all circumstances surrounding the making of the

14   communication.  For example, you may consider language,

15   specificity, frequency, context, relationship between the

16   defendant and the threat recipient, the recipient's response,

17   any previous threat made by the defendant.  All these are

18   things in which --

19                   THE COURT:  That's why -- as I've made clear to you

20   from days before the start of the trial through every single

21   day of the trial, I have erred on the side of caution in

22   allowing you to put in contextual evidence.

23                   I am willing -- if you want to give me some

24   language about provocation evidence can be considered in

25   context in evaluating whether the government has proved the

1  elements of its case, I've been willing from the beginning to

2  do that and I'm just waiting for you to give it to me.

3              MR. LEVIN:  We're not asking for a provocation

4  instruction, your Honor, but --

5              THE COURT:  No, but I'm saying to you -- you know

6  full well what you are doing.  It is in your opening

7  statement.  It is not a -- you didn't tie it to context.

8  You're inviting the jury to find the defendant not guilty

9  because he was provoked by Mr. Lambert, and that is not a

10  legal basis on which a jury could find the defendant not

11  guilty.

12              I'm very willing to give any reasonable additional

13  language on provocation that you want me to give understanding

14  that you have preserved your objection to the entire concept

15  of provocation.  You say, don't say a darn word about it,

16  Judge, and I've heard you on that.  I understand your

17  objection on that.  Your objection on that is overruled.

18              MR. LEVIN:  Okay.

19              THE COURT:  I am now explaining to you that I am

20  asking for your help to say, all right, Judge -- the judge

21  doesn't agree with me on this, but the judge has asked me over

22  and over and over again to explain how I should instruct on

23  this particular issue.

24              And so I've been asking and asking and asking, and

25  I'm now asking again, will you please give it to me.

1          MR. LEVIN:  I have two suggestions, your Honor.

2          If the Court is going to give the instruction over

3    the defendant's objection, we would ask that it be amended to

4    read as follows:  "Evidence of provocation may be relied upon

5    to determine whether the government has met its burden to

6    prove beyond a reasonable doubt every element of the charges

7    in this case.  If you find that the government has met its

8    burden of proving beyond a reasonable doubt every element of

9    the charges, however, the evidence of provocation does not

10   negate the defendant's criminal culpability."

11         And then the other thing is --

12         THE COURT:  Wait.  How does that strike you?

13         MR. DAVIS:  Evidence of provocation is not relevant

14   to proof of intent to extort or proof of intent to threat.

15         THE COURT:  No, but see -- you're absolutely right

16   as a matter of law, but here's the challenge.  What I've

17   understood all along -- to the extent I can understand what

18   the defense is, it's a context defense.  There are certain

19   aspects of the charges against the defendant that require the

20   jury to make an assessment of how a reasonable person in the

21   victim's position would receive communications, and I think

22   the defendant's argument, to the extent I can discern one, is

23   there's an argument that these people exist in a subculture

24   that we ordinary people don't understand.  It's a subculture

25   where people say things to each other that ordinary people

1   would find so shocking and reprehensible, and in order to

2   flesh that out and tell the truthful story, the jury needs to

3   hear about Mr. Cantwell's anger.

4          His anger is not a defense.  It doesn't undermine

5   the charge, but the context in which this entire communication

6   occurred, including Mr. Cantwell's anger, should be considered

7   by the jury in determining whether a person in the position of

8   the victim would reasonably understand the communications at

9   issue to be qualifying communications.

10          To the extent I can make any sense of your defense,

11   that's what it is.

12          MR. LEVIN:  That's right, your Honor.  That's

13   exactly right.

14          THE COURT:  Okay.  I wish you could have

15   articulated it for me at some point during my many, many

16   requests to help define it, to do that.  I've been spending

17   days trying to understand what you're doing, and that's how I

18   understand it.  So I've got it right, right?

19          So the language that you're proposing does not

20   strike me as problematic.

21          Do you have a problem with that, Mr. Davis?

22          MR. DAVIS:  Yes, your Honor.

23          THE COURT:  All right.  We need to see it in

24   writing.  Type it up.  Submit it.  I'll look at it after lunch

25   so I and Mr. Davis can evaluate the specific language you're

1   proposing.

2          That's what I had hoped we would have gotten into

3   last night when I was here until 7:00, 7:30 trying to address

4   suggestions that you had.

5          We're doing it late in the process, but you type it

6   up.  You submit it.  I'll look at it.  Mr. Davis will look at

7   it.  We'll come back after lunch and I'll evaluate it, but I'm

8   very willing to give additional language.

9          MR. LEVIN:  The other problem with the instruction

10  here is it says:  You may consider this evidence only for the

11  purpose of understanding the context of the relationship

12  between the defendant and victim one.

13         And when you go back to that jury instruction for

14  Count 1, it talks about than just the context.  It talks

15  about --

16         THE COURT:  Well, I narrowed that language at your

17  request from last night, by the way.

18         MR. LEVIN:  Right.

19         THE COURT:  It was broader and you said, could you

20  narrow it, which I did.

21         MR. LEVIN:  Yes, you did.  You narrowed it by

22  taking --

23         THE COURT:  So I granted your request and now

24  you're telling me it's too narrow.

25         MR. LEVIN:  I'm just -- in line with the requests

1    that we made, I'm saying that there are other things in which

2    its relevant to.

3          I mean, it's relevant evidence I think, and the

4    government has argued its relevant and we've argued it's

5    relevant and --

6          THE COURT:  It's relevant for motive on the

7    government's part because his anger and frustration is a

8    motive for him to commit the crime.  So all of that evidence

9    of anger and frustration is relevant on motive.

10          So if you're afraid the government is being denied

11    the opportunity to argue it for motive, I'll add they can

12    consider it for motive.

13          What else do you want it to be considered for?

14          MR. LEVIN:  We want it to be considered for all the

15    things that are listed in that jury instruction on page 14 in

16    determining --

17          THE COURT:  I'm happy to incorporate and repeat.

18          To be clear, what you want me to do essentially is

19    read it twice to the jury.  Read it once when I had it in the

20    original charge and read it again with respect to provocation.

21    You propose language to that effect and I'll do it.

22          MR. LEVIN:  Right.  To be clear, we're objecting to

23    the instruction altogether.

24          THE COURT:  You have preserved your argument that

25    there should be no word about provocation in the instructions.

1    That objection is overruled.

2              I am now asking for your help in what additional

3    language to add given the fact that you and I disagree about

4    whether the word provocation should be in my instruction.

5              MR. LEVIN:  Yes.

6              THE COURT:  You have a right to try to convince the

7    Court of Appeals that there should never have been any

8    reference to the word provocation.

9              MR. LEVIN:  Thank you.

10             THE COURT:  But I have to make the decision.  I

11   have made it.

12             Now, given that I have made it, I need your help in

13   building back into the instruction I'm going to give

14   everything that you think needs to be in there recognizing

15   your argument that there's just no way to cure the egregious

16   error I have committed, okay?

17             MR. LEVIN:  Thank you.

18             THE COURT:  So you'll present it to me in writing.

19   I'm happy to reread into that instruction the portion of the

20   instruction that I crafted specifically to try to allow the

21   jury to evaluate as best I could understand was your defense,

22   but I'm happy to repeat it again in the provocation and make

23   clear to them that evidence about Mr. Cantwell's anger or the

24   actions that they took as to him is evidence they can consider

25   in context in evaluating whether the government has proved its

 1   charges, but provocation is not a defense, okay?

 2              MR. LEVIN:  Thank you.

 3              THE COURT:  There's a way to do this.  I mean, we

 4   have to be careful with the language, and that's why I want

 5   your help.

 6              So bring it back to me and relatively quickly.  I'm

 7   going to go out and grab a sandwich, and then I'll be back

 8   looking for this and trying to edit it up while you guys are

 9   doing your closing arguments.

10              MR. LEVIN:  I'll e-mail it to everyone, including

11   Vinny.  Is that okay?

12              THE COURT:  All right.

13              Anything else you want to say on it?

14              MR. DAVIS:  Your Honor, could we have until

15   1 o'clock in light of the hour just because of lunch and we

16   have to have go back and get our stuff?

17              THE COURT:  Yeah, yeah, yeah.

18              MR. DAVIS:  Thank you.

19              (RECESS)

20

21

22

23

24

25

C E R T I F I C A T E

I, Susan M. Bateman, do hereby certify that the
foregoing transcript is a true and accurate transcription of
the within proceedings, to the best of my knowledge, skill,
ability and belief.

Submitted: 5-4-21          /s/   Susan M. Bateman _____
                          SUSAN M. BATEMAN, RPR, CRR