*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO AUGUST 10, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   1:20-cr-6-01-PB
            v.                      *   February 25, 2021
                                    *   3:18 p.m.
CHRISTOPHER CANTWELL                 *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:


For the Government:          Anna Z. Krasinski, AUSA
                             United States Attorney's Office



For the Defendant:           Eric Wolpin, Esq.
                             Jeffrey S. Levin, Esq.
                             Federal Defender's Office



Probation Officer:           Sean Buckley



Court Reporter:              Liza W. Dubois, RMR, CRR
                             Official Court Reporter

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good afternoon.  This is Judge

 3    Barbadoro.  I apologize I'm a little late.  I just had to

 4    finish up another hearing.

 5              So, Vinny, are you on the line?

 6              THE CLERK:  I am, Judge.  Everyone who needs to be

 7    here is on the line.

 8              THE COURT:  Okay.  Super.

 9              So I just wanted to talk to the parties about this

10    condition.  I'd like to find a way to work this out in a way

11    that's satisfactory to Mr. Cantwell that also achieves the

12    purposes that we're trying to achieve with the condition.  And

13    I don't -- I don't know which -- whoever from the defense wants

14    to speak, if you could just tell me what your concern is about

15    the condition and if you have any thoughts about ways we could

16    try to achieve the purposes of the condition it's designed to

17    achieve without unduly interfering with Mr. Cantwell's ability

18    to access and use the Internet.

19              MR. LEVIN:  Thank you, your Honor.  Jeff Levin on

20    the line.

21              Your Honor, we -- we maintain our objection to the

22    proposed special conditions 10 and 11.  Generally speaking, we

23    think they're unnecessary to address the -- the purposes of

24    supervision and rehabilitation.

25              The issue for us is that he has -- he's going to be
```

1    working as an IT person and so he will be using computers and

2    the Internet for his job.  This is -- this is really the -- the

3    way he has traditionally earned money is working as an IT

4    person and there's a company that's willing to hire him.

5            The concern is that the software that's used by

6    probation collects data from monitored computers.  So if it's

7    on a smartphone, it tracks usage of a person's communications

8    and the same is true if it's on a -- on a company computer.

9            So the -- that's the real concern, that it's going

10   to impact customers, impact data that's proprietary to the

11   company he's working for, and we think, you know, it's really

12   unnecessary in this case.  This was a private -- based on a

13   private communication between him and the victim in this case.

14   This isn't a situation where he's viewing child pornography or,

15   you know, searching for contraband information.  This is really

16   a situation where it would be monitoring his First

17   Amendment-protected activities and his employment activities.

18           THE COURT:  All right.  So can I ask first, do I

19   have a court reporter recording this?

20           THE COURT REPORTER:  Yes.

21           THE COURT:  Oh, great.  Okay.  Thank you.

22           Someone wanted to speak?

23           THE PROBATION OFFICER:  Yes, your Honor.  Sean

24   Buckley with probation.

25           THE COURT:  Yes.

1          THE PROBATION OFFICER:  I've been informed today by

2    Christopher Pingree in our supervision unit that this

3    monitoring would not be installed on a company's computer.  So

4    if he's working for a third party, they would not install that

5    monitoring software on that equipment.

6          THE COURT:  Yeah, you anticipated my proposal,

7    Mr. Buckley.  I -- I think we -- one way we could address part

8    of the objection -- so I don't expect the defendant to

9    relinquish any objection he has to anything, but one of the

10   things I was thinking about is, A, to say he shall disclose to

11   the probation officer all electronic devices that he will be

12   using for personal communication, nonwork-related

13   communication; he shall agree not to use any electronic devices

14   provided by an employer for any personal purposes; and any

15   monitoring software will be installed only on devices that he

16   discloses he may be using for personal purposes.

17          That would protect the employer -- potential

18   employer from any monitoring of that employer's work-related

19   activities.  The defendant would be prohibited from using his

20   employer-provided electronic equipment for personal purposes

21   and we would be able to monitor, to the extent we felt it

22   necessary, his personal use.

23          THE PROBATION OFFICER:  Correct.

24          THE COURT:  Again, I don't expect the defendant to

25   do anything, but Mr. Buckley, that would be satisfactory to

1    probation?

2           THE PROBATION OFFICER:  Absolutely, your Honor.

3           THE COURT:  Okay.  So, Mr. Levin, one of your

4    concerns, I believe, we can take care of.  You still have First

5    Amendment and -- this is overreach and unnecessary on First

6    Amendment grounds, restricts his ability to carry out his life

7    functions, the Internet's essential and so on.  Do you want to

8    press those arguments here?

9           MR. LEVIN:  Yes, your Honor, but we would also ask

10   that if the Court is going to impose a monitoring condition on

11   the personal computers that Christopher possesses that the --

12   that there be a reasonable suspicion requirement, that those --

13   the data that's collected should be reviewed only if reasonable

14   suspicion exists that there's been a violation of a condition

15   of supervision and the data contains evidence of that

16   violation.

17          THE COURT:  All right.  Mr. Buckley, I'm not as

18   familiar with the way this software works as I perhaps should

19   be.  Does the software keep data on usage that then has to be

20   accessed by someone in order to be viewed?

21          THE PROBATION OFFICER:  Yeah.  I mean, I'm

22   probably -- my knowledge of this company and how it works is

23   somewhat limited, but I have had several conversations, then

24   today in preparation of our hearing, and I'll relate to you

25   what I know.  But before I get there, I just wanted to at least

1  kind of respond to the defendant's, I guess, objection to

2  number 11.

3          Number 11 really is a -- essentially a search of the

4  computer to ensure that the software -- monitoring software has

5  been properly installed and that there's been no attempt to --

6  to thwart it or anything like that.

7          So it's not a full-blown search; we're just trying

8  to ensure that it's on there.  And there is other language in

9  the OPT report that talks about that a search would not be

10  conducted of his belongings and stuff like that for -- in

11  search of a violation unless there's reasonable suspicion.  And

12  the language that is proposed by the defendant in allowing the

13  access to this information only upon the condition -- only upon

14  the finding of a violation kind of prevents the whole

15  supervision purpose of the monitoring software.

16          But what I would like to --

17          THE COURT:  Mr. Buckley, wait, wait.

18          THE PROBATION OFFICER:  Sure.

19          THE COURT:  I need to -- I may not be envisioning

20  this properly, but there is software developed by some private

21  company that the government contracts with that gets installed

22  on his computer.  That software requires that certain records

23  be made of the defendant's use of his computers.  That

24  information is then stored somewhere and it is not inspected

25  unless someone makes an effort to look at it.

1            Is that right or wrong?  Is my understanding --

2            THE PROBATION OFFICER:  Well, my understanding is

3    that the new company that we've contracted with, there is some

4    analysis by that company in looking at the information, either

5    the keystrokes or any type of material.  The best I can

6    describe it is kind of in the context of a sex offender,

7    because that's where all of these cases have -- what do you

8    call it -- have, I guess, been part of this -- the software

9    monitoring.

10           So in some instances, with those cases, we have been

11   alerted by the contracting company that the defendant whose

12   computer is being monitored is looking up or accessing child

13   porn.  So we might get an alert that that person is viewing

14   explicit material and then we would take corrective action.

15           So there is some analysis by the third-party company

16   and also the probation officer has access to the software and

17   is able to look in, I guess, the portal to see what type of

18   things are being either keyed in or looked at or anything like

19   that.  So there is some sort of, I guess, analysis, for lack of

20   a better word.

21           THE COURT:  Well, all right.  So it sounds like we

22   don't really know.  I mean, I'd probably have to have an

23   evidentiary hearing on this point.  What it sounds to me like

24   is the company probably has set up the software so that there

25   are certain -- if certain events occur, a notice is provided to

1  the company who then looks at -- like, say, if keywords are

2  used or certain sites are accessed --

3              THE PROBATION OFFICER:  Correct.

4              THE COURT:  -- that the company would get notice of

5  it and then the company looks at it and if the company thinks

6  it's something the probation office needs to know about, they

7  tell the probation office and then the probation office can

8  look

9  more -- in more detail at it if it wants to.  And it also --

10             THE PROBATION OFFICER:  Correct.

11             THE COURT:  It sounds like you have the capacity to

12 look at the actual information yourself if you want to, even if

13 you don't get notice.  That seemed to be the second part of

14 what you were saying.

15             THE PROBATION OFFICER:  That's my understanding.

16 And my knowledge of this is very, very limited.

17             THE COURT:  All right.

18             MR. LEVIN:  Judge, I think that's our real objection

19 to this is that it's hard to imagine how -- what they're going

20 to be looking for --

21             THE COURT:  Yeah, let me just stop you.  Okay?

22 Because if I'm going your way, you probably want me to just

23 stop and let me go your way, won't you?

24             MR. LEVIN:  Okay.  All right.

25             THE COURT:  All right.  So I'll give you a chance to

```
1    say what you want to say, but let me first come back to the
2    government.
3              I'm not sure that this is equivalent to a sex
4    offender case where we need to have this very intrusive
5    monitoring software on the defendant's electronic devices.
6    I -- a condition that says on reasonable suspicion, you know, I
7    can say they -- that the defendant shall disclose all
8    electronic devices that he uses to communicate with the
9    Internet and always update the probation office with respect to
10   any changes in the electronic devices he accesses and that upon
11   reasonable suspicion that the defendant has engaged in offenses
12   or violations and has used electronic means to further those
13   violations, the probation officer shall be able to inspect the
14   defendant's computers for evidence of that kind of violation.
15   That would seem to be a much less intrusive way of addressing
16   this issue.
17             I think with respect to sex offenders, there's a
18   much stronger argument for this kind of persuasive monitoring
19   that you're talking about.  It's not as clear to me that it's
20   necessary in this particular case.
21             What's your reaction to that?
22             MS. KRASINSKI:  So I agree that it's not equivalent
23   to a sex offender case and I -- I agree that the monitoring
24   software sort of is imperfect in a case like this.  But where
25   the defendant has a history of violating probation terms by
```

1    mentioning victims in an online forum, as in the Virginia case,

2    I think the monitoring condition is appropriate here.

3            I don't necessarily have a problem with a reasonable

4    suspicion requirement to have probation review data that's

5    captured by the monitoring software.  I think that would be

6    reasonable.  The only sort of caveat I have is that I do think

7    there needs to be a way for probation to confirm that

8    monitoring software hasn't been interfered with.

9            In my experience with this monitoring software --

10   again, in a sex offender or in a sexual exploitation case --

11   the software essentially -- I don't know the time, the amount

12   of time between each screenshot, but has a set time and, you

13   know, would just kind of take screenshots along the way.  And

14   then in that case, we learned that the -- that defendant was

15   using it to contact the minor victim and were able to go back

16   and look.  But -- it's not perfect even in that -- even in that

17   context because there wasn't a real way to search or anything

18   like that.

19           So I would agree to a reasonable suspicion term, but

20   I think particularly with his bail violation from Virginia that

21   a condition is appropriate here, particularly for deterrence.

22           And I also want to be very sensitive to any

23   employers and to their data as well.  I think that's important.

24   I think him being successful on supervised release will -- I

25   mean, I think he'll need to have some type of employment to

1    help him be successful on supervised release.  I think that's

2    important and I want to help facilitate that for him.

3              So the only thing that I don't really understand how

4    to do with the monitoring software is just allow probation to

5    confirm that it hasn't been tampered with and that it is

6    functioning, but then to have some requirement -- reasonable

7    suspicion requirement to actually review it, I would be

8    completely fine with that.

9              THE COURT:  Refresh my memory as to what the

10   violation of probation was that you're referring to in the --

11   from the Charlottesville conviction.  Was there a specific

12   probation term that barred him from publishing certain names or

13   contacting victims or something?  What was the violation there?

14             MS. KRASINSKI:  The --

15             THE COURT:  I don't --

16             MR. LEVIN:  I'm sorry.  Go ahead.

17             MS. KRASINSKI:  No, go ahead, Jeff.

18             MR. LEVIN:  I thought that there was a -- in a civil

19   case there was a court order that he not reference the names of

20   the people that were suing him.  That was my recollection.  But

21   I could be wrong about that.

22             MS. KRASINSKI:  I am going to pull up -- it's just

23   going to take me one second.  There was a condition of his

24   pretrial release that he not reference the victims at all,

25   either on his podcast or online, and then before -- and then --

1          MR. LEVIN:  That's right.  And he was charged with a

2    violation for that and then I believe that that was dismissed,

3    that the judge found that he didn't violate that.  And we

4    have -- I have that order somewhere.

5          MS. KRASINKSI:  I have never seen an order finding

6    that he didn't violate that.  I have seen the capias issued for

7    that and then his plea that he violated the conditions of

8    release.

9          MR. LEVIN:  I'm not -- I guess my question is I'm

10   not sure that we need monitoring software to uncover that.

11   That was something that was published in public and that's why

12   he was charged with it, but ...

13         THE COURT:  Yeah, I -- this is not -- this

14   defendant's use of the Internet is -- unlike people like, say,

15   the victim in this case, I'm not aware that the defendant has a

16   practice of communicating on the Internet and disguising his

17   identity.  I mean, his -- what I could very much foresee is

18   once he gets out that he starts up his Internet programs again

19   and starts trying to publicly attack the victim or other people

20   that would be problematic during a period of supervised

21   release, but I -- this isn't a case like in a child sex offense

22   case where the defendant has a history of using the Internet in

23   deceptive ways.  It is the kind of case where he -- I mean, he

24   thrives on doing things -- outrageous things in public.  That's

25   how he makes a living, it seems to me.  I may have it wrong,

1    but that's my take on the defendant.  He does things that are

2    extreme and outrageous because it's a way of making money.  I

3    don't know.

4            Did I -- Ms. Krasinski, do you have a different take

5    on how he would potentially misuse the Internet during a period

6    of supervised release?

7            MS. KRASINSKI:  No, I -- I agree with the Court,

8    that if he were to misuse the Internet, that's how he would do

9    it, but I think that having monitoring software installed on

10   his electronic devices would deter him from using the Internet

11   to do things like that.

12           I've just pulled up and I can email it -- I

13   apologize.  We just got new computers.  I thought they'd be --

14   they would work a little bit better.

15           But -- and I can circulate this, the Commonwealth

16   motion to revoke or modify bond where -- if I can't get my

17   computer to work, I'll just have to move on, but where the

18   Commonwealth had instructed the defendant to refrain from

19   direct or indirect contact with the victim and that despite

20   that, the defendant continued to repost on social media

21   inflammatory or offensive messages from others regarding the

22   victims after counsel directed the defendant to remove the

23   post.  And notwithstanding that, the defendant continued to

24   engage in online communication intended to harass and

25   potentially intimidate victims in that matter.

1          So, you know, I understand that once he's on

2     supervised release, you know, he -- he can't be -- he can't

3     then interfere with preparation for trial by harassing or

4     intimidating witnesses, but he could potentially use the

5     Internet to harass or intimidate the victim in this case.  And

6     so I think the monitoring software's important -- is an

7     important -- has some deterrence value there.

8          And I can certainly circulate this.  It's in the

9     docket somewhere.  It was an attachment to our motion for

10    pretrial detention, but I can circulate this again if the Court

11    would like.

12              THE COURT:  Yeah.

13              THE PROBATION OFFICER:  Can I --

14              THE COURT:  Thank you for describing it for me.  I

15    think, though, it confirms my -- my take on the defendant.

16          I -- I think there is a real potential that the

17    defendant, when he completes his sentence, will go -- will

18    continue to use the Internet in ways to shock and provoke.

19    Some of that may be legitimate and not the subject of

20    regulation.  But to the extent he were to engage in

21    extortionate and threatening behavior again using the Internet,

22    that obviously would be potential criminal conduct that would

23    be the subject of legitimate regulation during a period of

24    supervised release.

25              So, Mr. Levin, just let me just come to you and say,

1    number one, I am persuaded that we should carefully limit any

2    condition so as not to subject any potential employer to any

3    kind of monitoring software.  I think we should make clear that

4    to the extent the defendant has access to any software or

5    hardware of a third party for business purposes that he shall

6    not use that -- that software or hardware for any other purpose

7    other than to fulfill his obligations to his employer.

8              I think that you're right; we don't want monitoring

9    software on any employer's computers or we don't want our

10   probation officer monitoring what's going on with any

11   employer's legitimate business activity.  I think we can

12   legitimately prevent your client from using his access to those

13   electronic devices for any purpose other than for the business

14   purposes for which he was hired so that it's at least a

15   condition that he not do -- use those computers for any kind of

16   personal purposes.  I think it's legitimate to require him to

17   disclose and keep current a list of all electronic devices that

18   he does access use for personal or his own personal business

19   purposes.

20             I think it's legitimate -- entirely legitimate to

21   have a condition that says he shall subject all of his personal

22   electronic devices for inspection by the probation officer on

23   reasonable suspicion that the defendant has engaged in conduct

24   which violates -- could violate any condition of his release.

25             So that much I'm, you know, quite comfortable about.

1    Where I start to have problems is whether this is an

2    appropriate case for the use of monitoring software, which is

3    substantially more intrusive.  The use of that software is --

4    seems clearly appropriate for certain kinds of sex offenses

5    where while under a period of supervision we have reason to be

6    concerned that a defendant may have surreptitious contact with

7    minor victims or may attempt by concealing his identity and

8    through other means to access child pornography while on

9    supervised release.  I'm just not sure this is the kind of case

10   where I need to have that monitoring software installed.

11          So --

12          THE PROBATION OFFICER:  Your Honor, can I interject

13   for one second?

14          THE COURT:  Yes, go ahead.

15          THE PROBATION OFFICER:  Yeah.  And I had this

16   discussion with my supervision officers yesterday in

17   preparation of the hearing.  And they did tell me that, you

18   know, ideally this software is set up for sex offenders, just

19   because of the explicit nature of the material in which that

20   they're viewing.  So the -- the nature of it itself is illegal,

21   so it's easy to put in keystrokes and phrases and things like

22   that because for most of the time, that's going to result in

23   the -- you know, them looking at that material.  There could be

24   some false positives, they might have looked at an article that

25   had those terms in there, but for the most part, that stuff is

1    easily identifiable and it's a violation of their terms of

2    supervised release.

3              But in a situation like this where it's a threat,

4    it's -- the terms that we would use by themselves can be very

5    benign and it's hard to say that that is a violation because,

6    you know, they're just words.  You have -- the threat is

7    because you're looking at it in the context of how he's using

8    that, so there is very likely that we would get a lot of false

9    positives.  So if he's viewing material that might have a --

10   you know, rape or have a threat or something like that, that

11   they could be very benign and we might get inundated with all

12   of these alerts that really, going through all of it, may not

13   amount to anything just because of the nature of the offense

14   itself.

15             THE COURT:  Right, views that are reprehensible and

16   associated with --

17             THE PROBATION OFFICER:  Absolutely.

18             THE COURT:  -- with behavior, but he has a First

19   Amendment right to think about whatever he wants --

20             THE PROBATION OFFICER:  Absolutely.

21             THE COURT:  -- to think about and he has First

22   Amendment rights to engage in communications that I find

23   abhorrent and repulsive and -- but are not an appropriate

24   subject of violating a -- him on a supervised release

25   condition.  So I -- I think we have to be careful to draw those

1   distinctions.

2          So, Mr. Levin, if -- is it all or nothing for you?

3   Is it your position that, Judge, there is no condition like the

4   one you're talking about that you could legitimately impose

5   that we would ever accept?  And if it is, then I'll just try to

6   work this out on my own and I'll just issue a modified

7   condition.

8          But if you think that you could live with a

9   condition like the one I'm proposing which says, A, the

10  defendant shall not use -- to the extent -- the defendant shall

11  list any -- keep a current listing and provide to probation of

12  all electronic devices that -- to which he has -- he has access

13  for personal or personal business purposes; that he shall not

14  use any electronic devices or electronic access that he has

15  for -- while employed for any employer for any other purpose

16  other than for the business purposes for which he's been

17  retained by that employer; and, C, upon reasonable suspicion

18  that the defendant has violated a condition of his release, he

19  shall subject all of his electronic devices for personal --

20  that he uses for personal purposes to inspection by the

21  probation officer and not have the monitoring software

22  installed at all.

23         Is that a kind of condition you could ever see you

24  and your client agreeing to?  If so --

25         MR. LEVIN:  Yes, absolutely, and I would just add to

1    that that reasonable -- reasonable suspicion that he's violated

2    a condition of his release and that the -- the device contains

3    evidence of that.  I mean, that would be the --

4                    THE COURT:  Right.

5                    MR. LEVIN:  Those are the -- the two requirements --

6    the two prongs, I think, that give rise to a search.

7                    THE COURT:  All right.  If you would -- if you could

8    conceive of that as being acceptable, would you be willing to

9    take a shot at drafting the proposed condition language that

10   would be acceptable to your client, share it with the

11   government and the probation officer, the government and the

12   probation officer will have seven days after you submit it to

13   propose any objections, and then I'll write the condition the

14   way I think it should be written.

15                   But I'm inclined to do it that way because this

16   seems to be a somewhat different case from a sex offender case.

17   There may be an occasion where I have to hold a hearing and

18   fully examine the details of this particular monitoring

19   software.  I think there are occasions where the use of

20   monitoring software is appropriate because we don't -- can't,

21   except in extreme cases, completely cut off a defendant's

22   access to the Internet, yet defendants on supervised release

23   may well pose special risks to the public if they use

24   electronic devices.

25                   So the use of monitoring software in those

1    circumstances may be appropriate, but where a monitoring

2    condition is challenged by a defendant, I think I would

3    probably need to hold an evidentiary hearing, get the

4    consultant in, understand fully how the monitoring software

5    works, and then try to take my shot at drafting a condition

6    that properly balances the public interest in ensuring that the

7    defendant is not using electronic means to violate supervised

8    release against the defendant's First Amendment and privacy

9    interests.  And -- but that would be a long, involved process

10   so that we could then set up a case where the First Circuit

11   could issue a decision which would then guide all subsequent

12   courts in our circuit as to how to use these conditions.

13          I don't think we need to do that in this case

14   because my take on this defendant is not that he won't violate.

15   I think there's a high risk that he does violate supervised

16   release.  But he has -- in my view, the defendant has very poor

17   impulse control, but he lashes out and he lashes out publicly.

18   And if he lashes out publicly using the Internet, then it's

19   highly likely there'll be reasonable suspicion to believe that

20   he committed an offense and, frankly, the defendant might well

21   be not inclined to even deny it.  He's -- he -- he sort of is

22   what he is, does what he does, and things happen to him as a

23   result.  That's sort of my take on this defendant.  It's not

24   like he's going to be using pseudonyms to plan secret attacks

25   on the Capitol or something.  That isn't the picture of the

1    defendant that I -- that I see.

2            MR. LEVIN:  Short of another -- short of another

3    threat, as like the one in this case, I can't really imagine

4    what he would say, either publicly or privately, that would --

5    that would violate the conditions of his release.

6            But so just so I'm clear, in terms of the -- the

7    ingredients, the ingredients are that he maintain a list of the

8    devices that he's using and provide that to the probation

9    officer; that he keep his personal devices separated from his

10   business devices and -- and not use business devices for

11   personal reasons; and then, third, that he submit to a search

12   of his devices if there's reasonable suspicion --

13           THE COURT:  Yeah.

14           MR. LEVIN:  -- that a violation --

15           THE COURT:  The only addition I'd make to that,

16   Mr. Levin, as we're talking about it, is that you distinguish

17   third-party business uses --

18           MR. LEVIN:  Right.

19           THE COURT:  -- from his personal -- because he

20   has -- he will use the Internet for business reasons of his own

21   and --

22           MR. LEVIN:  Right.

23           THE COURT:  -- those have to be devices that he

24   lists and discloses.  I just don't want to -- like if he goes

25   to work for Microsoft, I don't want him to be agreeing to a

1    reasonable suspicion search criteria to search Microsoft's

2    computers because he works for Microsoft.

3             MR. LEVIN:  Right.

4             THE COURT:  What I want to do is just say to him,

5    you can't use Microsoft computers for any purpose other than

6    what you've been engaged in by Microsoft.

7             MR. LEVIN:  Right.

8             THE COURT:  And if we end up tracking him using them

9    for some improper purpose, that would be a violation of the

10   condition.  And that way we don't have to worry about maybe

11   we'd be -- he'd be agreeing to searches of Microsoft computers

12   on reasonable suspicion.

13            So if you can draw that distinction between his

14   personal uses and personal business uses from business uses

15   while engaged to perform work for third-party employers --

16            MR. LEVIN:  Right.

17            THE COURT:  -- and those third-party employers, that

18   he simply agree that he will not use any of those devices for

19   any purpose other than the purpose for which he's been engaged

20   by that employer; and then that he make the disclosure of the

21   others and that on reasonable suspicion any of those devices

22   that -- that he has used for his personal or personal business

23   purposes that can be tied through reasonable suspicion to a

24   violation can be subject to searches.  That would be the kind

25   of condition I'd -- I'd be -- I'm inclined to impose.  And I --

1    I think it may make sense to give you the first shot at trying

2    to draft that and submit it to the government and to the

3    probation office.

4              And feel free to consult with Mr. Buckley.  He might

5    have some language for you and -- but if you propose it and

6    then I can get the other two people to react to it and then

7    I'll come up with the final draft and put it in the condition.

8              MR. LEVIN:  Okay.

9              THE PROBATION OFFICER:  Can I make a --

10             MS. KRASINSKI:  Your Honor --

11             THE PROBATION OFFICER:  -- suggestion?

12             THE COURT:  Yes, Mr. Buckley, go ahead, and then

13   Ms. Krasinski.

14             THE PROBATION OFFICER:  Yeah.  So as a practical

15   matter, you know, what I understand from the parties and from

16   the Court is that just looking at the OPT form or report, we

17   would get rid of the condition -- yeah, condition number 10 and

18   11 that deal specifically with the computer monitoring, but

19   number 8 and 9 talk about the overall search condition and then

20   9 is really more of a you must submit your computer.

21             So some of that language that the Court is talking

22   about is already included in number 9.  My suggestion to Jeff

23   would be to kind of incorporate the judge's suggestions and add

24   at that to 9 because it includes all of that information anyway

25   about reasonable suspicion on those devices.

1              MR. LEVIN:  Okay.

2              THE COURT:  Yeah.  Mr. Buckley, you can take out 10

3    and 11 and just add the 9 to make sure we've covered everything

4    that I've talked about.

5              THE PROBATION OFFICER:  Yup.  And I'm happy to work

6    with Jeff.

7              THE COURT:  Okay.  Why don't you do that,

8    Mr. Buckley.

9              Mr. Levin, feel free to contact Mr. Buckley as you

10   work this out.  And, again, it might be worth like sending an

11   email to the government and to Mr. Buckley, how does this work,

12   and if you all three agree and you then file something and

13   represent that we all agree on this condition, I'll just adopt

14   it.

15             MR. LEVIN:  Sounds good.

16             THE COURT:  Okay.  Ms. Krasinski --

17             MS. KRASINSKI:  Your Honor --

18             THE COURT:  -- did you want to say anything?

19             MS. KRASINKSI:  Yeah.  My -- my only comment is, you

20   know, this defendant has a history of having a lot of

21   electronic devices and so I just reasonably don't know how

22   probation would be able to say if there was reasonable

23   suspicion that the defendant committed a violation and evidence

24   that -- evidence of that violation would be on one of his

25   electronic devices, how they would know which specific device,

1    you know, be it his phone or one of his laptops or his desktop.

2         So I would just ask that whatever condition sort of

3    not be so narrow as to require probation reasonable suspicion

4    with regards to one specific device.

5         THE COURT:  Yeah, I --

6         MS. KRASINKSI:  Because I practically don't know how

7    they would do that.

8         THE COURT:  No, I of course agree with you on that.

9    And my own view, frankly, is that if -- if it's a device that

10   is connectable to the Internet and there's reasonable suspicion

11   to believe that the defendant has used an electronic device to

12   communicate in a way that violates the condition of release,

13   that would justify the reasonable suspicion to search any of

14   the devices that are Internet-capable that he has.

15        So I -- you know, Mr. Levin can disagree and you can

16   play around with the language of it, but the reasonable

17   suspicion standard, in my view, is a very -- is a much lower

18   threshold standard than the probable cause standard and the

19   particularity requirement with electronic devices under these

20   circumstances would work in a different way.  But Mr. Levin can

21   preserve his right to argue differently and so on and so forth.

22        But I agree with you that it's an unusual case where

23   we have the kind of metadata to be able to tie it to a specific

24   device within the home.  We might get a -- an indication that

25   it came from a particular location, but there probably could be

1    15 devices that would access that and you wouldn't be able to

2    further identify it necessarily.  But that would give

3    reasonable suspicion to justify an inspection of anything.

4    Look, at some point we just -- we have to be realistic about

5    it.

6            So, Mr. Levin, take your best shot, work it out with

7    the others, and I'll just do what I need to do here.  I just

8    did not want to try to -- Mr. Cantwell's got his appellate

9    arguments here on the sentence, the trial, whatever he wants to

10   argue.  We don't need to take up the First Circuit's time in

11   this case on a litigation of First Amendment rights and Fourth

12   Amendment rights and a monitoring software condition.  If we

13   want to set up an appeal on that issue, we need to develop the

14   record better than we've developed it and in this particular

15   case I just don't think it works -- it is as clearly necessary

16   as it may be in certain kinds of cases like certain types of

17   sex offender cases.

18           So, all right, Mr. Levin, I appreciate your -- your

19   flexibility here.  Why don't you take the first shot, work with

20   the others.  If you can't get agreement, just tell me what you

21   propose; the others can file their objection.  You know, let's

22   not let too much time go by here.

23           So if, Mr. Levin, you could try to put something

24   together within a week and circulate it and if the probation

25   office or the government have objections, they can file

1  objections within three days afterwards.  I'll look at it, make

2  any revisions to the proposal that I need to make, and

3  incorporate in the judgment, sign the judgment so Mr. Cantwell

4  can get on with his life wherever he's going to be assigned.

5          Is there anything else that anybody wants to take up

6  with me about this particular issue?

7          THE PROBATION OFFICER:  No, your Honor.

8          MR. LEVIN:  No, your Honor.

9          THE COURT:  No.

10          MS. KRASINSKI:  No, your Honor.

11          THE COURT:  Okay.  Good.  Thank you, everybody.  I

12  appreciate it.  It's an interesting discussion and at some

13  point we may need to do more on this, but I don't think this is

14  the case to do it in.  So I think there's a good practical way

15  to resolve the problem.

16          All right.  That concludes the hearing.  Thank you

17  for your help.

18          THE PROBATION OFFICER:  Thank you.

19          THE COURT:  Thank you.  Bye-bye.

20          (Proceedings concluded at 3:58 p.m.)

21

22

23

24

25

C E R T I F I C A T E


      I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate transcription
of the within proceedings, to the best of my knowledge, skill,
ability and belief.


Submitted: 5/12/21          */s/  Liza W. Dubois*
                                 LIZA W. DUBOIS, RMR, CRR